CAPITAL AREA DISTRICT LIBRARY v MICHIGAN OPEN CARRY, INC

Docket No. 304582. Submitted July 11, 2012, at Lansing. Decided October 25, 2012, at 9:00 a.m. Leave to appeal sought.

The Capital Area District Library (CADL) brought an action against Michigan Open Carry, Inc. (MOC), in the Ingham Circuit Court for declaratory and injunctive relief, seeking to validate and enforce its policy that prohibited bringing weapons onto its premises. The court, Rosemarie E. Aquilina, J., granted summary disposition in CADL's favor, ruling that CADL, as a district library established under the District Library Establishment Act (DLEA), MCL 397.171 *et seq.*, had the authority to promulgate its weapons policy under MCL 397.182(1) and, because CADL was not a local unit of government as defined by MCL 123.1101(a), MCL 123.1102 did not prohibit it from regulating firearms. The court also enjoined MOC and other members of the public from openly carrying weapons on library premises. MOC appealed.

The Court of Appeals *held*:

1. CADL had the authority to adopt its weapons policy under MCL 397.182(1), which allows a district library board to adopt bylaws and regulations governing the board and district library, supervise and control district library property, and do any other thing necessary for conducting the district library service.

2. CADL's policy regarding firearms on its premises was preempted by state law because the Legislature intended to occupy the field of firearms regulation. MCL 123.1102 provides that a local unit of government may not enact or enforce any ordinance or regulation pertaining to, or regulate in any other manner, the ownership, registration, purchase, sale, transfer, transportation, or possession of pistols or other firearms, ammunition for pistols or other firearms, or components of pistols or other firearms except as otherwise provided by state or federal law. MCL 123.1101(a) defines a local unit of government as including a city, village, township, or county. CADL is a district library that was jointly established by a both a city and a county pursuant to the DLEA, MCL 397.173. When two or more municipalities unite to establish a district library, they create an authority that is separate from the constituent municipalities. While MCL 123.1102 does not expressly bar district libraries created in this

manner from imposing firearms regulations, district libraries are quasi-municipal corporations, which are governmental agencies that can exercise only those powers that are granted in express words or necessarily and fairly implied in or incident to powers expressly conferred by the Legislature. State law may preempt a regulation by any inferior level of government that attempts to regulate the same subject matter as a higher level of government. A state statutory scheme preempts regulation by a lower-level governmental entity when (1) the local regulation directly conflicts with the state statutory scheme or (2) the state statutory scheme occupies the field of regulation that the lower level government entity seeks to enter, even if there is no direct conflict between the two schemes of regulation. CADL's weapons ban does not directly conflict with Michigan's statutory scheme pertaining to gun regulation because no Michigan statute expressly prohibits district libraries from regulating weapons. Whether the state has occupied a field of regulation is determined using the guidelines set forth in *People v Llewellyn*, 401 Mich 314 (1977). Under these guidelines, a state law preempts local regulation if it expressly provides that the state's authority to regulate in a specified area of the law is to be exclusive, and preemption may be implied if an examination of legislative history supports it, the state regulatory scheme is pervasive, or the nature of the regulated subject matter demands exclusive state regulation to achieve the uniformity necessary to serve the state's purpose or interest. In this case, first, although MCL 123.1102 does not explicitly state that it occupies the whole field of regulation, it expressly removes the power of local units of government to regulate in the field of firearms, subject to limited exceptions, which was a clear policy choice to remove from local units of government the authority to dictate where firearms may be taken. The language of MCL 123.1102 is broad and all-encompassing and cannot reasonably be interpreted to exclude local ordinances that address the carrying of firearms in municipal buildings. Second, the legislative history supported a finding that the purpose of the statute would only be served by leaving it to the state to regulate firearm possession in all buildings established by local units of government, including district libraries. MCL 123.1102 was designed to address the proliferation of local regulation regarding firearm ownership, sale and possession and the concern that continued local authority to enact and enforce gun control ordinances would result in the establishment of a patchwork of ordinances. The title of 1990 PA 319 states that the act was designed to prohibit local units of government from imposing restrictions in the area of firearms regulation. Although a district library is not included in the definition of "local unit of government" set forth in MCL 123.1101(a), excluding a district library from the field of regulation simply because it was established

by two local units of government instead of one would defy the purpose of the statute and lead to patchwork regulation. Third, the statutory scheme regulating firearms was pervasive, addressing who may possess a firearm; how, when, and where a firearm may be possessed; and how Michigan residents could obtain a license to carry a concealed weapon. The extent and specificity of this statutory scheme, coupled with the Legislature's clear policy choice to remove from local units of government the authority to dictate where firearms may be taken, demonstrated that the Legislature occupied the field of firearm regulation that CADL's weapons policy attempted to regulate. Fourth, the nature of the regulation of firearm possession demanded exclusive state regulation to achieve the uniformity necessary to serve the state's purpose or interest. Preventing all public libraries established by a city, village, township, or county from passing their own firearms regulations without preventing district libraries from doing so would result in a patchwork of inconsistent local regulations. Because state law preempted CADL's weapons policy, the trial court erred by granting summary disposition in favor of CADL and abused its discretion by permanently enjoining MOC, its members, their agents, and members of the public from entering CADL's buildings and branches while openly carrying a weapon in violation of CADL's weapons policy.

Reversed.

GLEICHER, P.J., concurring in part and dissenting in part, concurred with the majority's determinations that CADL was not a local unit of government as defined in MCL 123.1101(a) and that CADL's weapons policy was permitted by the DLEA but dissented from its conclusion CADL's policy was preempted by state law given that the plain language of MCL 123.1101(a) and MCL 123.1102 precluded only cities, villages, townships, and counties, not district libraries or authorities, from regulating firearm possession.

1. CONSTITUTIONAL LAW — PREEMPTION.

A state statutory scheme preempts regulation by a lower-level governmental entity when the local regulation directly conflicts with the state statutory scheme or the state statutory scheme occupies the field of regulation that the lower level government entity seeks to enter, even if there is no direct conflict between the two schemes of regulation; a state statutory scheme is preemptive if it expressly provides that the state's authority to regulate in a specified area of the law is to be exclusive; preemption may be implied from a consideration of whether the legislative history of the state statutory scheme supports it, whether the scheme is

pervasive, and whether the nature of the regulated subject matter demands exclusive state regulation to achieve the uniformity necessary to serve the state's purpose or interest.

2. WEAPONS — FIREARMS — CONSTITUTIONAL LAW — PREEMPTION — LOCAL UNITS OF GOVERNMENT — DISTRICT LIBRARIES.

MCL 123.1102 provides that a local unit of government may not enact or enforce any ordinance or regulation pertaining to, or regulate in any other manner, the ownership, registration, purchase, sale, transfer, transportation, or possession of pistols or other firearms, ammunition for pistols or other firearms, or components of pistols or other firearms except as otherwise provided by state or federal law; state law completely occupies the field of firearm regulation to the exclusion of local units of government; a district library established under MCL 397.173, while not a local unit of government as defined by MCL 123.1101(a), is nevertheless preempted as a quasi-municipal agency from regulating the possession of firearms.

*Murphy, Brenton & Spagnuolo, P.C.* (by *Vincent P. Spagnuolo, Gary L. Bender*, and *Lindsay N. Dangl*), for plaintiff.

*Dean G. Greenblatt, PLC* (by *Dean G. Greenblatt*), for defendant.

Before: GLEICHER, P.J., and SAAD and BECKERING, JJ.

BECKERING, J. This case is about whether district libraries established under the District Library Establishment Act (DLEA), MCL 397.171 *et seq.*, are subject to the same restrictions regarding firearm regulation that apply to public libraries established by local units of government. Plaintiff, the Capital Area District Library (CADL), brought this action for declaratory and injunctive relief, seeking to validate and enforce its ban on firearms on its premises. Defendant, Michigan Open Carry, Inc. (MOC), argues that CADL does not have the power to regulate firearms. Our job is not to determine who has the better moral argument regarding when and where it is appropri-

ate to carry guns. Instead, we are obligated to interpret and apply the law, regardless of whether we personally like the outcome. MCL 123.1102 expressly prohibits local units of government from regulating firearms except as otherwise provided by federal or state law. Our Court has held that, in light of MCL 123.1102, state law *completely occupies* the field of firearm regulation to the exclusion of local units of government. *Mich Coalition for Responsible Gun Owners v Ferndale*, 256 Mich App 401, 412-414; 662 NW2d 864 (2003). Although district libraries are not expressly included within the definition of a local unit of government for purposes of MCL 123.1102, because we are dealing with regulation by a quasi-municipal governmental agency in an area that is regulated by the state, we are bound to apply Michigan's doctrine of field preemption in determining whether a district library is free to regulate firearm possession. Our Supreme Court in *People v Llewellyn*, 401 Mich 314, 323-324; 257 NW2d 902 (1977), requires that we examine (1) legislative history pertaining to the regulated area, (2) the pervasiveness of the state regulatory scheme in the regulated area, and (3) the nature of the regulated subject matter and whether it demands exclusive state regulation to achieve the uniformity necessary to serve the state's purpose or interest. Because all three factors support a finding of field preemption, and because we are bound by this Court's field-preemption analysis in *Mich Coalition*, we reverse the trial court's rulings upholding and enforcing CADL's weapons policy to the extent it regulates firearm possession.

### I. BASIC FACTS AND PROCEDURAL HISTORY

CADL is a district library established pursuant to the DLEA and a district-library agreement executed by the city of Lansing and Ingham County on March 10, 1997.

CADL has branches throughout Ingham County. It is funded by property taxes and state assistance; it also receives distributions of penal fines. Seven members constitute its operating board. Municipalities within the district appoint the board members; however, the board members operate independently of the municipalities. Under the DLEA, the operating board has the authority to adopt bylaws and regulations. CADL's operating board adopted a code of conduct that contains the following weapons policy, which is the subject of this litigation: "All weapons are banned from Library premises to the fullest extent permitted by law."

MOC is a Michigan nonprofit corporation. According to MOC, its objectives are to "protect our right to self-defense," "educate and desensitize the public and members of the law enforcement community about the legality of the open carry of a handgun in public," "exercise a natural right to self defense using . . . a handgun," and "demonstrate to the public at large that gun owners are one of the most lawful segments of society and that they have nothing to fear from the lawful carry of a firearm." One method MOC uses to accomplish these purposes is to hold "informal gatherings in public places throughout the state while [openly carrying] our handguns."

On multiple occasions between December 2010 and February 2011, individual members of MOC openly carried guns in CADL's downtown Lansing branch. One occasion allegedly involved a person carrying a shotgun. Some library patrons and employees were disturbed by the presence of exposed firearms. CADL believes that Michigan law permits it to prohibit the open carrying of firearms on its premises. Accordingly, when a person openly carries a handgun on CADL's premises, one of CADL's security guards asks the person to leave. Gen-

erally, the person complies with the security guard's request. If the person does not comply with the request, a security guard will stay near the person until he or she leaves the library. Initially, CADL's employees called the Lansing police when a person openly carrying a firearm entered the library. However, the Lansing police refused to remove the person without a court order.

CADL filed suit on February 15, 2011, seeking both a declaratory judgment establishing the validity of its weapons policy and injunctive relief to enforce the policy. The next day, the trial court granted CADL a temporary restraining order. On April 19, 2011, CADL moved the trial court for summary disposition under MCR 2.116(C)(9) (failure to state a valid defense) and (C)(10) (no genuine issue of material fact and entitlement to judgment as a matter of law). CADL argued that (1) its weapons policy is valid because it is within CADL's authority to adopt the policy and the policy is not preempted by MCL 123.1102 and (2) the open carrying of weapons is brandishing, which is prohibited by MCL 750.234e. MOC opposed the motion, arguing that CADL's policy is preempted by state law and violates the right to bear arms guaranteed by the United States and Michigan Constitutions. MOC also argued that MCL 750.234e does not prohibit the open carrying of a firearm because openly carrying a firearm is not brandishing.

The court granted summary disposition in favor of CADL under MCR 2.116(C)(9), holding that the DLEA authorized CADL to implement a weapons policy and that MCL 123.1102 does not preempt CADL's weapons policy. The court declined to determine whether open carrying constitutes illegal brandishing under MCL 750.234e. However, the court suggested that while mere open carrying may not necessarily constitute brandishing, doing so in a library has "an aspect of an intent to make someone

feel threatened or intimidated." The next day, the trial court issued a declaratory judgment upholding CADL's weapons policy as a matter of law. The court also permanently enjoined MOC, its members, their agents, and members of the public from entering CADL buildings or branches while openly carrying a weapon in violation of CADL's weapons policy.

## II. STANDARD OF REVIEW

"Summary disposition under MCR 2.116(C)(9) is proper if a defendant fails to plead a valid defense to a claim." *Village of Dimondale v Grable*, 240 Mich App 553, 564; 618 NW2d 23 (2000). We review de novo a trial court's grant or denial of a motion for summary disposition under MCR 2.116(C)(9). See *Slater v Ann Arbor Pub Sch Bd of Ed*, 250 Mich App 419, 425; 648 NW2d 205 (2002). "When deciding a motion under MCR 2.116(C)(9), which tests the sufficiency of a defendant's pleadings, the trial court must accept as true all well-pleaded allegations and properly grants summary disposition where a defendant fails to plead a valid defense to a claim." *Id.* "Summary disposition under MCR 2.116(C)(9) is proper when the defendant's pleadings are so clearly untenable that as a matter of law no factual development could possibly deny the plaintiff's right to recovery." *Id.* at 425-426. Whether a state statutory scheme preempts a local regulation is a question of statutory interpretation and, thus, a question of law that we review de novo. *Ter Beek v City of Wyoming*, 297 Mich App 446, 452; 823 NW2d 864 (2012). Furthermore, we review for an abuse of discretion a trial court's decision to grant injunctive relief. *Taylor v Currie*, 277 Mich App 85, 93; 743 NW2d 571 (2007). A trial court abuses its discretion when it reaches a decision that falls outside the range of reasonable and principled outcomes. *Id.*

III. ANALYSIS

A. CADL'S AUTHORITY TO PROMULGATE RULES OR REGULATIONS
PERTAINING TO FIREARM POSSESSION

MOC first argues that CADL had no authority under the DLEA to promulgate rules or regulations regarding the possession of firearms on its property. We disagree.

"The primary goal of statutory interpretation is to give effect to the Legislature's intent, focusing first on the statute's plain language." *Klooster v City of Charlevoix*, 488 Mich 289, 296; 795 NW2d 578 (2011). The language is read according to its "ordinary and generally accepted meaning." *Oakland Co Bd of Co Rd Comm'rs v Mich Prop & Cas Guaranty Ass'n*, 456 Mich 590, 599; 575 NW2d 751 (1998). If the language of a statute is clear, it must be enforced as written "because the Legislature must have intended the meaning it plainly expressed." *Id.*

Under the Michigan Constitution, "[t]he legislature shall provide by law for the establishment and support of public libraries which shall be available to all residents of the state under regulations adopted by the governing bodies thereof." Const 1963, art 8, § 9. This constitutional provision grants public libraries, including district libraries, "the discretion to adopt regulations pertaining to the library's governance, functioning, and management of its resources." *Goldstone v Bloomfield Twp Pub Library*, 268 Mich App 642, 647; 708 NW2d 740 (2005); see also *Herrick Dist Library v Library of Mich*, 293 Mich App 571, 575; 810 NW2d 110 (2011) (stating that a district library is a public library); MCL 397.552(d) (defining "public library").

Under the DLEA, two or more municipalities may enter into an agreement to create a district library. MCL 397.173; *Herrick Dist Library*, 293 Mich App at

575-576. A district library is governed by a board, which has the following statutory powers under MCL 397.182(1):

> (a) Establish, maintain, and operate a public library for the district.
>
> (b) Appoint and remove officers from among its members.
>
> (c) Appoint and remove a librarian and necessary assistants and fix their compensation.
>
> (d) Purchase, sell, convey, lease, or otherwise acquire or dispose of real or personal property, including, but not limited to, land contracts and installment purchase contracts.
>
> (e) Erect buildings.
>
> (f) *Supervise and control district library property.*
>
> (g) Enter into a contract to receive library-related service from or give library-related service to a library or a municipality within or without the district.
>
> (h) *Adopt bylaws and regulations, not inconsistent with this act, governing the board and the district library.*
>
> (i) Propose and levy upon approval of the electors as provided in this act a tax for support of the district library.
>
> (j) Borrow money pursuant to the district library financing act, 1988 PA 265, MCL 397.281 to 397.290.
>
> (k) Issue bonds pursuant to the district library financing act, 1988 PA 265, MCL 397.281 to 397.290.
>
> (*l*) Accept gifts and grants for the district library.
>
> (m) *Do any other thing necessary for conducting the district library service*, the cost of which shall be charged against the district library fund. [Emphasis added.]

We conclude that the library's weapons policy is permitted by the DLEA. Under MCL 397.182(1)(h), a district-library board may "[a]dopt bylaws and regulations ... governing the board and the district library." Additionally, MCL 397.182(1)(m) allows a district-library board to "[d]o

any other thing necessary for conducting the district library service," and MCL 397.182(1)(f) allows a district-library board to "[s]upervise and control district library property." These are broad grants of power that logically cover the library's weapons policy. The library's weapons policy is a regulation that governs the district library and district-library services.

Accordingly, the trial court correctly held that CADL has the authority under the DLEA to adopt the weapons policy.

### B. PREEMPTION

MOC also argues that CADL is expressly and impliedly preempted from promulgating regulations regarding firearms on its premises. For the reasons set forth below, we agree that field preemption bars CADL's regulation of firearms.

#### 1. RELEVANT STATE FIREARMS STATUTE

Chapter 123 of the Michigan Compiled Laws pertains to local governmental affairs. It governs everything from the power of municipalities to operate a system of public recreation and playgrounds to their authority to establish and maintain garbage systems and waste plants. In 1990, the Legislature enacted MCL 123.1101 *et seq.* "to prohibit local units of government from imposing certain restrictions on the ownership, registration, purchase, sale, transfer, transportation, or possession of pistols or other firearms, ammunition for pistols or other firearms, or components of pistols or other firearms." Title, 1990 PA 319.[1] MCL 123.1102 provides:

---

[1] Although an act's title "is not to be considered authority for construing an act, it is useful for interpreting the purpose and scope of the act." *Mich Coalition,* 256 Mich App at 409 n 6.

> A local unit of government shall not impose special taxation on, enact or enforce any ordinance or regulation pertaining to, or regulate in any other manner the ownership, registration, purchase, sale, transfer, transportation, or possession of pistols or other firearms, ammunition for pistols or other firearms, or components of pistols or other firearms, except as otherwise provided by federal law or a law of this state.

In MCL 123.1101(a), the Legislature defined the phrase "local unit of government" to mean "a city, village, township, or county." Notably, CADL is not owned by a city, village, township, or county. Rather, it is jointly established by a both a city and a county. As stated earlier, it is a district library established pursuant to the DLEA. MCL 397.173. When two or more municipalities unite to establish a district library together, they create an "authority" that is separate and apart from the constituent municipalities. *Jackson Dist Library v Jackson Co*, 428 Mich 371, 382; 408 NW2d 801 (1987). Thus, as a district library, CADL is not expressly barred by MCL 123.1102 from imposing firearms regulations. The analysis, however, does not stop there. Because we are dealing with regulation by a governmental agency in an area that is regulated by the state, we are bound to apply Michigan's doctrine of field preemption in determining whether the state has occupied the field of gun regulation to the exclusion of other local units of government such as a district library.

2. DISTRICT LIBRARIES ARE QUASI-MUNICIPAL CORPORATIONS
SUBJECT TO PREEMPTION

Although district libraries have the authority to adopt bylaws and regulations and do any other thing necessary for conducting the district-library service, as stated earlier, this Court has held that a district library is a quasi-municipal corporation, i.e., a governmental

agency authorized by constitution or statute to operate for and about the business of the state. *Jackson Dist Library v Jackson Co #1*, 146 Mich App 392, 396; 380 NW2d 112 (1985), citing *Attorney General ex rel Kies v Lowrey*, 131 Mich 639, 643; 92 NW 289 (1902). "[T]he term 'municipal corporation' may be used in the broad sense to include . . . quasi-municipal corporations." *Huron-Clinton Metro Auth v Attorney General*, 146 Mich App 79, 82; 379 NW2d 474 (1985). Quasi-municipal corporations "possess and can exercise only such powers as are granted in express words or those necessarily and fairly implied in or incident to powers expressly conferred by the Legislature." *Id.* As previously discussed, the DLEA gives CADL's board the authority to adopt regulations that govern the library, to supervise and control library property, and to do any other thing necessary to conduct the CADL district-library service. MCL 397.182(1).

Nevertheless, a quasi-municipal corporation such as a district library remains subject to the Constitution and the laws of this state. See *Detroit Sch Dist Bd of Ed v Mich Bell Tel Co*, 51 Mich App 488, 494-495; 215 NW2d 704 (1974) (explaining that a school district, a quasi-municipal corporation, is a state agency that is subject to the Constitution and laws of the state); *Lowrey*, 131 Mich at 644 ("The school district is a State agency. Moreover, it is of legislative creation. It is true that it was provided for in obedience to a constitutional requirement; and whatever we may think of the right of the district to administer in a local way the affairs of the district, under the Constitution, we cannot doubt that such management must be in conformity to the provisions of such laws of a general character as may from time to time be passed . . . ."); see also generally *Llewellyn*, 401 Mich at 321 ("Under Const 1963, art 7, § 22, a Michigan municipality's power to adopt resolutions and

ordinances relating to municipal concerns is 'subject to the Constitution and law'."). Indeed, state law may preempt a regulation by any inferior level of government that attempts to regulate the same subject matter as a higher level of government. See *McNeil v Charlevoix Co*, 275 Mich App 686, 697 & n 11; 741 NW2d 27 (2007). "Thus, although we deal here with a regulation promulgated by a local administrative agency, application of the principles developed in determining the validity of local ordinances in light of statutory enactments on the same or similar subject matter is appropriate." *Id.* at 697 n 11.

### 3. APPLICATION OF *LLEWELLYN* FACTORS IN ASSESSING STATE PREEMPTION IN A REGULATED FIELD

A state statutory scheme preempts regulation by a lower-level governmental entity when either of two conditions exist: (1) the local regulation directly conflicts with the state statutory scheme or (2) the state statutory scheme occupies the field of regulation that the lower-level government entity seeks to enter, "even where there is no direct conflict between the two schemes of regulation."[2] *Llewellyn*, 401 Mich at 322; see also *Ter Beek*, 297 Mich App at 453; *Mich Coalition*, 256

---

[2] With all due respect to our learned colleague in dissent, her analysis fails to acknowledge the fact that *Llewellyn* is binding precedent, which we as an intermediate court may not choose to disregard or rebuff. As such, the dissent avoids the required application and analysis of field preemption. It is a tautology to say that because the Legislature did not expressly include district libraries in its definition of local units of government as set forth in MCL 123.1101(a), it must have specifically intended not to occupy the field of gun regulation when it comes to the presence of guns in district libraries. While cases often rise and fall on the plain language of a statute, because this matter entails regulation by a lower-level governmental entity in an area that is regulated by the state, it is not a statutory-interpretation case. Such a simplistic analysis would render the doctrine of field preemption a nullity, which it is not.

Mich App at 408. CADL's weapons ban does not directly conflict with Michigan's statutory scheme pertaining to gun regulation because no Michigan statute expressly prohibits district libraries from regulating weapons. To determine whether field preemption applies, i.e. whether the state has occupied the field of regulation that CADL seeks to enter in this case, we must evaluate the law using the guidelines set forth by our Michigan Supreme Court in *Llewellyn*:

> First, where the state law expressly provides that the state's authority to regulate in a specified area of the law is to be exclusive, there is no doubt that municipal regulation is pre-empted.
>
> Second, pre-emption of a field of regulation may be implied upon an examination of legislative history.
>
> Third, the pervasiveness of the state regulatory scheme may support a finding of pre-emption. While the pervasiveness of the state regulatory scheme is not generally sufficient by itself to infer pre-emption, it is a factor which should be considered as evidence of pre-emption.
>
> Fourth, the nature of the regulated subject matter may demand exclusive state regulation to achieve the uniformity necessary to serve the state's purpose or interest.
>
> As to this last point, examination of relevant Michigan cases indicates that where the nature of the regulated subject matter calls for regulation adapted to local conditions, and the local regulation does not interfere with the state regulatory scheme, supplementary local regulation has generally been upheld.
>
> However, where the Court has found that the nature of the subject matter regulated called for a uniform state regulatory scheme, supplementary local regulation has been held pre-empted. [*Llewellyn*, 401 Mich at 323-325 (citations omitted).]

With regard to the first *Llewellyn* guideline—whether state law expressly provides that the state's

authority to regulate in the area of firearm possession is to be exclusive and preemptive of municipal regulation—we concluded in *Mich Coalition* that MCL 123.1102 did so clearly, albeit indirectly. *Mich Coalition*, 256 Mich App at 413-414. In *Mich Coalition*, the city of Ferndale enacted an ordinance that prohibited the possession or concealment of a weapon in all buildings in Ferndale that were owned or controlled by the city, including city hall, fire stations, and the library. *Id*. at 402-403, 412. This Court held that, while stated in the negative rather than the affirmative, the state made a clear policy choice to occupy the field of firearm regulation to the exclusion of local units of government:

> With the pronouncement in [MCL 123.1102], *the Legislature stripped local units of government of all* authority to regulate firearms by ordinance or otherwise with respect to the areas enumerated in the statute, except as particularly provided in other provisions of the act and unless federal or state law provided otherwise. Unlike some other statutes, [MCL 123.1102] does not use language to the effect that the act "occupies the whole field of regulation," but rather *expressly removes the power of local units of government to regulate in the field. The effect is to occupy the field to the exclusion of local units of government.* In other words, although stated in the negative, rather than the affirmative, the statutory language of [MCL 123.1102] demonstrates that, in effect, *state law completely occupies the field of regulation* that the Ferndale ordinance seeks to enter, to the exclusion of the ordinance, although subject to limited exceptions. See *Llewellyn*, [401 Mich at 322]. With the enactment of [MCL 123.1102], the Legislature made a *clear policy choice to remove from local units of government the authority to dictate where firearms may be taken.*

> \* \* \*

> [T]he language of [MCL 123.1102] is broad and all-encompassing. A state statute that prohibits a local unit of

government from enacting "any ordinance or regulation" or regulating "in any other manner" the transportation or possession of firearms cannot reasonably be interpreted to exclude local ordinances that address the carrying of firearms in municipal buildings. [*Id.* at 413-414 (emphasis added)].

This Court held that the Ferndale ordinance was preempted by MCL 123.1102, and "[b]ecause the net effect of [MCL 123.1102] is to completely occupy the field," it found it unnecessary to address the other *Llewellyn* factors. *Id.* at 414 n 12. However, because a district library is not included in the statute's definition of a local unit of government, and even though there is no direct conflict between the two schemes of regulation, we must continue to evaluate the *Llewellyn* factors to ascertain whether the state's preemption in the field of gun regulation extends to district libraries. See *Llewellyn*, 401 Mich at 322.

*Llewellyn*'s second guideline in determining whether state law preempts the field of regulation that CADL seeks to enter requires us to examine legislative history. *Llewellyn*, 401 Mich at 323. When the Legislature enacted MCL 123.1102, the House Legislative Analysis Section indicated that House Bill 5437 was designed to address the "proliferation of local regulation regarding firearm ownership, sale, and possession" and the "concern that continued local authority to enact and enforce gun control ordinances may result in the establishment of a patchwork of ordinances." House Legislative Analysis, HB 5437, January 30, 1991, p 1. As mentioned earlier, the title of 1990 PA 319 states that the act was designed to prohibit local units of government from imposing restrictions in the area of firearms regulation. Although not included in the definition of "local unit of government" set forth in MCL 123.1101(a), a district library is nevertheless a local unit of government.

Excluding a district library from the field of regulation—simply because it is established by *two* local units of government instead of one—defies the purpose of the statute and would undoubtedly lead to patchwork regulation. Every district library in the state of Michigan could enact its own unique rules and regulations regarding firearms possession, leaving to the public the obligation of determining where they can bring—or avoid—guns.[3] Thus, while the express language of the statute fails to include a district library in its definition of local units of government, the legislative history supports a finding that the purpose of the statute would only be served by leaving it to the state to regulate firearm possession in all buildings established by local units of government, including district libraries.

The third guideline set forth in *Llewellyn* requires us to examine the pervasiveness of the state regulatory scheme. In addition to the Legislature's enactment of MCL 123.1102, the Legislature's statutory scheme regarding firearm regulation addresses who may possess a firearm and how, when, and where a firearm may be possessed. Subject to exceptions for certain individuals, MCL 750.234d(1) prohibits a person from possessing a firearm on the premises of any of the following: depository financial institutions, churches or other places of religious worship, courts, theatres, sports arenas, daycare centers, hospitals, and establishments licensed under the former Michigan Liquor Control Act. With the exception of certain individuals, MCL 750.237a(4)

---

[3] As established by MCL 123.1102 and *Mich Coalition*, all public libraries that are owned by cities, villages, and townships are currently preempted from regulating firearms. Thus, the issue is essentially whether legislative history supports a finding that the state intended to occupy the field of regulation to the exclusion of local units of government *except for* district libraries, which are established by two or more local units of government.

prohibits the possession of a weapon in a weapon-free school zone, which is defined as "school property and a vehicle used by a school to transport students to or from school property." MCL 750.237a(6)(d). Subject to certain exceptions, MCL 28.425o(1) prohibits a person who is licensed to carry a concealed pistol from carrying a concealed pistol on the premises of any of the following: a school or school property; a public or private childcare center, daycare center, child-caring institution, or child-placing agency; a sports arena or stadium; a bar or tavern licensed under the Michigan Liquor Control Code, MCL 436.1101 *et seq.*; any property or facility owned by a church or other place of worship; certain entertainment facilities falling within MCL 28.425o(1)(f); a hospital; and a dormitory or classroom of a college or university.

In addition to the above laws addressing where firearms may not be possessed, state law also prohibits the following, subject to certain exceptions: the possession of a machine gun or firearm that shoots or is designed to shoot automatically more than one shot without manual reloading, by a single function of the trigger, MCL 750.224; the possession of a short-barreled shotgun or a short-barreled rifle, MCL 750.224b; the possession of a firearm by a felon, MCL 750.224f; the carrying of a firearm with the intent to use it illegally against another person, MCL 750.226; the carrying of a concealed weapon without a license to do so, MCL 750.227; the possession of a firearm during the commission of a felony, MCL 750.227b; the possession of a loaded firearm, other than a pistol, in or upon a sailboat or a motor vehicle, aircraft, motorboat, or any other vehicle propelled by mechanical means, MCL 750.227c; the possession of a loaded firearm, other than a pistol, in or upon a motor vehicle or any self-propelled vehicle designed for land travel if the firearm is not taken

down, enclosed in a case, carried in the trunk of the vehicle, or inaccessible from the interior of the vehicle, MCL 750.227d; intentionally aiming or pointing a firearm at or toward another person, MCL 750.233; knowingly brandishing a firearm in public, MCL 750.234e; a minor's possession of a firearm in public, MCL 750.234f; and possessing a firearm while under the influence of alcohol or a controlled substance, MCL 750.237(1). Finally, the Legislature has established a standardized system for Michigan residents to obtain a license to carry a concealed pistol. See *Mich Coalition*, 256 Mich App at 410-411; MCL 28.421a through 28.435.

As can be gleaned from these numerous statutes included in the Legislature's statutory scheme regulating firearms, the statutory scheme includes "a broad, detailed, and multifaceted attack" on the possession of firearms. *Llewellyn*, 401 Mich at 326. The extent and specificity of this statutory scheme, coupled with the Legislature's "clear policy choice [in MCL 123.1102] to remove from local units of government the authority to dictate where firearms may be taken," *Mich Coalition*, 256 Mich App at 414, demonstrates that the Legislature has occupied the field of firearm regulation that the library's weapons policy attempts to regulate: the possession of firearms.

This conclusion is supported by consideration of the fourth *Llewellyn* guideline: whether the nature of the regulated subject matter demands exclusive state regulation "to achieve the uniformity necessary to serve the state's purpose or interest." *Llewellyn*, 401 Mich at 324. The regulation of firearm possession undoubtedly calls for such exclusive state regulation. If the state prevents all public libraries established by a city, village, township, or county from passing their own firearms regulations but does not similarly prevent district libraries from doing so,

it would result in a "Balkanized patchwork of inconsistent local regulations." See *City of Brighton v Hamburg Twp*, 260 Mich App 345, 355; 677 NW2d 349 (2004). In such a case, citizens of this state would be subject to varying and possibly conflicting regulations regarding firearms and "a great deal of uncertainty and confusion would be created." *Llewellyn*, 401 Mich at 327. It would be extremely difficult for firearm owners to know where and under what circumstances they could possess a gun and just as difficult for other members of the public to know what libraries to avoid should they wish not to be around guns. An exclusive, uniform state regulatory scheme for firearm possession is far more efficient for purposes of obedience and enforcement than a patchwork of local regulation.

Accordingly, we hold that state law preempts CADL's weapons policy because the Legislature, through its statutory scheme in the field of firearm regulation, has completely occupied the field that CADL's weapons policy attempts to regulate.[4] The trial court, therefore, erroneously granted summary disposition in favor of CADL on the basis that the weapons policy was valid as a matter of law. Furthermore, we hold that the trial court abused its discretion by granting CADL's request for permanent injunctive relief, i.e., by permanently enjoining MOC, its members, their agents, and members of the public from entering CADL's buildings and branches while openly carrying a weapon in violation of CADL's weapons policy.

### IV. CONCLUSION

We conclude that state law preempts CADL's weapons policy to the extent that it attempts to regulate

---

[4] In light of this conclusion, we do not address the remaining issues raised by the parties on appeal.

firearms contrary to the restrictions set forth in MCL 123.1102. The library is a quasi-municipal corporation and, thus, a governmental agency subject to the principles of preemption when it attempts to regulate subject matter that is regulated by the Legislature. The Legislature, through MCL 123.1102, has expressly prohibited local government regulation of firearms and ammunition generally in cities, villages, townships, and counties, including in their libraries. Although a district library is not a local unit of government as defined by MCL 123.1101(a), legislative history, the pervasiveness of the Legislature's regulation of firearms, and the need for exclusive, uniform state regulation of firearm possession as compared to a patchwork of inconsistent local regulations indicate that the Legislature has completely occupied the field that CADL seeks to enter. Certainly, at a time where this country has witnessed tragic and horrific mass shootings in places of public gathering, the presence of weapons in a library where people of all ages—particularly our youth—gather is alarming and an issue of great concern. However, because of field preemption, the same regulations that apply to public libraries established by one local unit of government apply to those established by two or more local units of government—leaving the matter to the state.

We reverse the trial court's judgment upholding CADL's weapons policy to the extent that it attempts to regulate firearms contrary to the restrictions set forth in MCL 123.1102 and vacate the trial court's order granting permanent injunctive relief.

SAAD, J., concurred with BECKERING, J.

GLEICHER, P.J. (*concurring in part and dissenting in part*). I concur with the majority's determination that the Capital Area District Library is not a "local unit of

government" as defined in MCL 123.1101(a) and that the library's weapons policy is permitted by the District Library Establishment Act, MCL 397.171 *et seq.* Precisely because the library is not a local unit of government and has promulgated a policy falling squarely within its rulemaking authority, I respectfully dissent from the majority's conclusion that the field-preemption doctrine nullifies the plain language of the relevant statutes.

The majority's field-preemption analysis flows from MCL 123.1102, which states:

> A local unit of government shall not impose special taxation on, enact or enforce any ordinance or regulation pertaining to, or regulate in any other manner the ownership, registration, purchase, sale, transfer, transportation, or possession of pistols or other firearms, ammunition for pistols or other firearms, or components of pistols or other firearms, except as otherwise provided by federal law or a law of this state.

This statute applies to "a local unit of government." The Legislature specifically defined that term to mean "a city, village, township, or county." MCL 123.1101(a). Conspicuously absent from this definition is a district library or an authority.[1] Thus, a district library is not subject to MCL 123.1102, which prohibits local units of government from enacting or enforcing any regulations pertaining to the possession of firearms.[2]

---

[1] A district library constitutes "an authority separate and apart from either the city or the county" for the purpose of taxation. *Jackson Dist Library v Jackson Co*, 428 Mich 371, 378; 408 NW2d 801 (1987).

[2] The Legislature has elsewhere defined the term "local unit of government" far more expansively than it chose to do in MCL 123.1101(a). For example, MCL 324.20101(bb) defines the term to mean "a county, city, township, or village, an agency of a local unit of government, an authority or any other public body or entity created by or pursuant to state law." Under MCL 257.811i(4)(*i*), a "local unit of government" includes "[a]n

Fundamentally, field preemption is a question of legislative intent. See *Walsh v River Rouge*, 385 Mich 623, 639; 189 NW2d 318 (1971). Application of the doctrine requires a court to examine sources and values outside the statutory text to divine whether the Legislature intended to occupy a field of regulation. But the Michigan Supreme Court has repeatedly emphasized that the Legislature's intent in drafting an unambiguous statute is to be gleaned only from the words contained in the text. "[C]ourts may not speculate about an unstated purpose where the unambiguous text plainly reflects the intent of the Legislature." *Pohutski v City of Allen Park*, 465 Mich 675, 683; 641 NW2d 219 (2002). This is so because "[a]ny other nontextual approach to statutory construction will necessarily invite judicial speculation regarding the probable, but unstated, intent of the Legislature with the likely consequence that a court will impermissibly substitute its own policy preferences." *People v McIntire*, 461 Mich 147, 153; 599 NW2d 102 (1999) (quotation marks and citation omitted). This commitment to the statutory text is not merely a matter of history or prudence; instead, it constitutes a bedrock principle of separation of powers. See *Trentadue v Buckler Automatic Lawn Sprinkler Co*, 479 Mich 378, 406-407; 738 NW2d 664 (2007); *Robertson v DaimlerChrysler Corp*, 465 Mich 732, 758-759; 641 NW2d 567 (2002). Simply put, "our judicial role precludes imposing different policy choices than those selected by the Legislature . . . ." *Robertson*, 465 Mich at 759 (quotation marks and citation omitted).

authority or other public body created by or pursuant to state law." MCL 169.209(6) states, " 'Local unit of government' means a district, authority, county, city, village, township, board, school district, intermediate school district, or community college district." The recent amendment of MCL 169.209 left that definition unchanged. See 2012 PA 275, effective January 1, 2013.

In this case, the majority rejects that the plain words of the statute mean what they say. In so ruling, the majority ignores the text and instead divines from highly selective legislative history and the majority's own notion of public good that the Legislature intended to prohibit district libraries from banning firearms on their premises. In my view, the plain language of MCL 123.1101(a) belies the majority's field-preemption analysis. The Legislature limited the reach of MCL 123.1102 to firearm regulations enacted by cities, villages, townships and counties. To read into that list district libraries or authorities is to cast aside the clearest possible expression of legislative will in the interest of rewriting the statute.

Applied as written, the words of MCL 123.1101(a) and MCL 123.1102 preclude only cities, villages, townships, and counties from regulating firearm possession. Because "[t]he most reliable indicator of the Legislature's intent is the words in the statute," *People v Peltola*, 489 Mich 174, 181; 803 NW2d 140 (2011), we must presume that the Legislature purposefully selected the entities it included in the term "local unit of government" and elected not to incorporate in the definition district libraries or authorities. "[T]he search for legislative intent begins and ends in the language of the statute." *People v Morton*, 423 Mich 650, 655; 377 NW2d 798 (1985). Accordingly, this Court should simply apply MCL 123.1101(a) and MCL 123.1102 in accordance with their obvious meaning. Doing so compels the conclusion that the Legislature did not intend to extinguish the ability of district libraries and authorities to regulate firearms.

Despite the clarity of the statutes at issue, the majority embarks on a journey through the thicket of preemption to find the library's policy illegal. By apply-

ing the field-preemption doctrine to this case, I believe that the majority has strayed from its task of interpreting rather than making law. "Where the statute unambiguously conveys the Legislature's intent, 'the proper role of a court is simply to apply the terms of the statute to the circumstances in a particular case.' " *Dep't of Transp v Tomkins*, 481 Mich 184, 191; 749 NW2d 716 (2008) (citation omitted). Rather than confining its analysis to the statutory text, the majority discerns legislative "policy" from legislative history and the existence of other firearm-related statutes and concludes that the Legislature intended to extinguish local regulation addressing firearms. This "intent" is certainly not expressed in the statute. To the extent the majority employs the field-preemption doctrine as a vehicle for ignoring the statutory text, I respectfully submit that the majority has erred.

Federal preemption doctrines emanate from the Supremacy Clause of the United States Constitution, which provides: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . ." US Const, art VI, § 2. "Field preemption does not rest on an express congressional provision, or a conflict between federal and state law, but instead occurs 'if federal law so thoroughly occupies a legislative field as to make reasonable the inference that Congress left no room for the States to supplement it.' " *Wisconsin Central, Ltd v Shannon*, 539 F3d 751, 762 (CA 7, 2008), quoting *Cipollone v Liggett Group, Inc*, 505 US 504, 516; 112 S Ct 2608; 120 L Ed 2d 407 (1992) (quotation marks and citations omitted). "Where . . . the field which Congress is said to have pre-empted includes areas that have been traditionally occupied by the States, congressional intent to supersede state laws must be clear and manifest." *English v Gen Electric Co*,

496 US 72, 79; 110 S Ct 2270; 110 L Ed 2d 65 (1990) (quotation marks and citations omitted).

Preemption under Michigan law derives from Const 1963, art 7, § 22, which declares:

> Under general laws the electors of each city and village shall have the power and authority to frame, adopt and amend its charter, and to amend an existing charter of the city or village heretofore granted or enacted by the legislature for the government of the city or village. *Each such city and village shall have power to adopt resolutions and ordinances relating to its municipal concerns, property and government, subject to the constitution and law.* No enumeration of powers granted to cities and villages in this constitution shall limit or restrict the general grant of authority conferred by this section. [Emphasis added.][3]

In *People v Llewellyn*, 401 Mich 314, 323-324; 257 NW2d 902 (1977), our Supreme Court articulated a field-preemption analysis that considers four factors: (1) whether state law expressly preempts any further lawmaking, (2) whether preemption should be implied based on a court's examination of legislative history, (3) whether preemption may be implied from the "pervasiveness of [a] state regulatory scheme," and (4) whether "the nature of the regulated subject matter . . .

---

[3] The majority does not address the legal basis for applying field-preemption analysis to a policy announced by a district library. Unquestionably, our Constitution sets forth a "supremacy clause" applicable to the "resolutions and ordinances" of cities and villages. Const 1963, art 7, § 22. Equally obvious is the fact that a governmental entity may not develop and enforce policies that violate Michigan law or federal law. By its nature, field preemption is an imprecise doctrine that seeks to discern, among other vague guideposts, whether a statutory scheme is "pervasive" and whether the legislative history speaks to an interest in uniform regulation. I question whether this Court should apply field-preemption analysis outside the realm of municipal law. Because the doctrine sweeps so broadly, it may displace perfectly "legal" rules and policies generated by myriad quasi-governmental agencies based on judicial notions of overriding interests.

demand[s] exclusive state regulation to achieve the uniformity necessary to serve the state's purpose or interest." All these guidelines except the first invite judges to make policy choices. Alternatively stated, *Llewellyn*'s field-preemption methodology encourages courts to depart from the expressed statutory language and to instead decide cases based on "extratextual sources such as legislative testimony, the perceived intent of the Legislature, [or] overarching policy considerations . . . ." *Paige v Sterling Hts*, 476 Mich 495, 515; 720 NW2d 219 (2006).

The majority has unquestioningly accepted *Llewellyn*'s invitation, inferring preemption based on the majority's view of legislative history,[4] the majority's determination that the Legislature meant to occupy the field of firearm regulation even though it never said so, and the majority's opinion that statewide regulation would be preferable to permitting district libraries to prohibit guns. In reaching these conclusions, the majority has disregarded our Supreme Court's oft-repeated instruction that "our judicial role precludes imposing different policy choices than those selected by the Legislature[.]" *Johnson v Recca*, 492 Mich 169, 187; 821 NW2d 520 (2012) (quotation marks and citations omitted).

When the Legislature has expressed the intent that state law supplant local regulation, courts must give effect to legislative will. But our Legislature has never expressly provided that it possesses an exclusive ability to regulate firearms. Instead, the Legislature enacted

---

[4] By way of legislative history, the majority cites House Legislative Analysis, HB 5437, January 30, 1991. Our Supreme Court has characterized a house legislative analysis as "a staff-prepared summary of the law . . . entitled to little judicial consideration in the construction of statutes." *Johnson v Recca*, 492 Mich 169, 188; 821 NW2d 520 (2012) (quotation marks and citation omitted).

an admittedly comprehensive statute prohibiting an expansive range of local regulations and specifically limited the reach of that statute to cities, villages, townships or counties. That limitation fully corresponds with an intent to preserve the authority of other quasi-governmental units to regulate firearms. Given that in MCL 123.1101(a) the Legislature unambiguously set forth the "field" relevant to MCL 123.1102, I discern no basis for applying field-preemption analysis. By doing so, the majority interposes judicial considerations above and beyond the words selected by the Legislature.

*Czymbor's Timber, Inc v Saginaw*, 478 Mich 348; 733 NW2d 1 (2007), illustrates a textually sensitive approach to field preemption. The allegedly preemptive statute in *Czymbor's Timber* was found in part 419 of the Natural Resources and Environmental Protection Act, MCL 324.101 *et seq.* It provided that the Department of Natural Resources "may regulate and prohibit hunting, and the discharge of firearms and bow and arrow . . . on those areas established under this part" in certain circumstances. MCL 324.41901(1). Saginaw enacted ordinances banning the discharge of firearms and arrows within city limits. *Czymbor's Timber*, 478 Mich at 350. The plaintiffs sought to hunt on their private land located within the city of Saginaw. They challenged the validity of the ordinances, contending that "because neither ordinance contains a hunting exception, the ordinances conflict with and are preempted by MCL 324.41901[.]" *Id.*

The Supreme Court observed that the Legislature specifically circumscribed the application of MCL 324.41901 to "property established under part 419." *Id.* at 356 (quotation marks omitted). Because plaintiffs had not made the requisite showing that their property

was a hunting area established under part 419, the Supreme Court declined to employ a preemption analysis. *Id.* at 357. In other words, the Supreme Court examined the statutory language before considering whether the Saginaw ordinances were preempted. Preemption analysis then became irrelevant, because the Legislature had specifically limited the statute's reach. *Czymbor's Timber* teaches that simple application of guiding statutory-construction principles may eliminate the relevance of field-preemption analysis. I suggest that the plain language of MCL 123.1101(a) similarly renders preemption analysis superfluous in this case.

By applying the *Llewellyn* guidelines, the majority disregards MCL 123.1101(a) and instead embarks on a judicial excursion into a dark cavern. The majority perceives a legislative intent not from the statutory text, which conclusively refutes any notion that the Legislature has expressly and solely occupied the field of firearm regulation. Rather, the majority concludes that the district library's weapons policy runs afoul of legislative history, contradicts a statutory scheme the majority characterizes as " 'a broad, detailed, and multifaceted attack' on the possession of firearms," contravenes a legislative "policy choice" gleaned from the majority's interpretation of legislative history and the statutory scheme, and violates the majority's view that "regulation of firearm possession undoubtedly calls for . . . exclusive state regulation." Thus, the majority imposes on clear and unambiguous statutory language its view of what the law *should* be, despite that the text clearly states otherwise.

We may not presume that the Legislature mistakenly or inadvertently omitted district libraries or authorities from the definition of "a local unit of government."

When "statutory language is certain and unambiguous, judicial construction is neither required nor permitted, and courts must apply the statute as written." *Turner v Auto Club Ins Ass'n*, 448 Mich 22, 27; 528 NW2d 681 (1995). "Courts cannot assume that the Legislature inadvertently omitted from one statute the language that it placed in another statute[.]" *People v Monaco*, 474 Mich 48, 58; 710 NW2d 46 (2006) (quotation marks and citation omitted). The rules governing statutory construction also forbid this Court from deducing that the Legislature "mistakenly utilized one word or phrase instead of another." *Chaney v Dep't of Transp*, 447 Mich 145, 165; 523 NW2d 762 (1994). Nor may courts "assume that the Legislature inadvertently omitted from one statute the language that it placed in another statute, and then, on the basis of that assumption, apply what is not there." *Peltola*, 489 Mich at 185 (quotation marks and citation omitted); see also *Reichert v Peoples State Bank for Savings*, 265 Mich 668, 672; 252 NW 484 (1934) ("It is to be assumed that the legislature . . . had full knowledge of the provisions of [the relevant statutes] and we have no right to enter the legislative field and, upon assumption of unintentional omission . . . , supply what we may think might well have been incorporated.").

This case illustrates that when applied in a manner untethered to the text, the *Llewellyn* guidelines empower judges to inject their own policy preferences into the task of statutory construction. Given the clarity of the statutes here at issue, the majority's determination that the Legislature meant to preempt the field of firearm regulation turns on *judicial* opinions unmoored from the actual words selected by the Legislature. Whether "[a]n exclusive, uniform state regulatory scheme for firearm possession is far more efficient for purposes of obedience and enforcement than a patch-

work of local regulation" is not our concern. Nor are the pros and cons of openly carrying weapons into a place devoted to quiet reading and study. Our only task is to apply well-established legal principles to the task of interpreting a statute. In my view, the statute is susceptible to only one interpretation, and that interpretation compels us to affirm the circuit court.[5]

---

[5] The majority characterizes as "simplistic" my view that the judicially created implied field-preemption doctrine may not circumvent plain statutory language. I readily agree that the fundamental rule of statutory construction at the heart of this case is a simple one. The Supreme Court has repeatedly instructed that "a court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature *as derived from the words of the statute itself.*" *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 63; 642 NW2d 663 (2002) (emphasis added). To the extent that the majority's application of the field-preemption doctrine requires psychoanalyzing the Legislature to find a preemptive intent, the majority has contravened this bedrock principle. See *Devillers v Auto Club Ins Ass'n*, 473 Mich 562, 582; 702 NW2d 539 (2005) ("Statutory . . . language must be enforced according to its plain meaning, and cannot be judicially revised or amended to harmonize with the prevailing policy whims of members of this Court."); *Halloran v Bhan*, 470 Mich 572, 579; 683 NW2d 129 (2004) ("As we have invariably stated, the argument that enforcing the Legislature's plain language will lead to unwise policy implications is for the Legislature to review and decide, not this Court."); *Lansing Mayor v Pub Serv Comm*, 470 Mich 154, 165; 680 NW2d 840 (2004) ("An analysis . . . that is in conflict with the actual language of the law and predicated on some supposed 'true intent' is necessarily a result-oriented analysis. In other words, it is not a legal analysis at all."), and countless other cases. Nor have I chosen to "disregard or rebuff" *Llewellyn*. When a statute explicitly defines the field of its reach, use of the *implied* field-preemption doctrine described in *Llewellyn* violates the canons of statutory construction and any application of *Llewellyn* is unjustified.