# STATE OF MICHIGAN

# COURT OF APPEALS

JOSHUA WADE,

          Plaintiff-Appellant,

v

UNIVERSITY OF MICHIGAN,

          Defendant-Appellee.

FOR PUBLICATION
June 6, 2017

No. 330555
Court of Claims
LC No. 15-000129-MZ

Before: CAVANAGH, P.J., and SAWYER and SERVITTO, JJ.

SAWYER, J. (*dissenting*).

I respectfully dissent.

First, I do not believe it necessary to reach the constitutional question presented in this case as I believe it can be resolved on the preemption issue. Accordingly, I will focus solely on the preemption issue. Additionally, I wish to make clear that my opinion only relates to the specific question before the Court: the authority of defendant to regulate the possession of firearms by members of the general public who are legally carrying the firearm under the provisions of state law in areas of defendant's campus that are open to the general public. I leave for another case the questions of defendant's authority to regulate the possession of firearms by its students or employees, or in areas in which the general public are prohibited access.

I do not disagree with the majority that this case is not strictly controlled by the preemption provision in MCL 123.1102. That statute bans local units of government from enacting their own laws regulating firearms. But, as the majority points out, "local unit of government" is defined under MCL 123.1101(b) as "a city, village, township, or county." And, of course, defendant is none of those. But that does not end the analysis. Rather, in looking to this Court's decision in *Capital Area Dist Library v Mich Open Carry, Inc,*[1] I conclude that both the trial court and the majority misapprehend the effect of field preemption in resolving this case.

In *CADL*, this Court rejected the direct application of the preemption provisions of MCL 123.1102 because a district library was not contained within the definition of a "local unit of

---

[1] 298 Mich App 220; 826 NW2d 736 (2012).

government" under MCL 123.1101(a).[2] The opinion then goes on to provide a detailed analysis of the applicability of field preemption and the application of the factors under *People v Llewellyn*.[3] I need not extensively review the issue of field preemption here as the *CADL* opinion does an admirable job of doing just that. I need only refer to its ultimate conclusion: "the pervasiveness of the Legislature's regulation of firearms, and the need for exclusive, uniform state regulation of firearm possession as compared to a patchwork of inconsistent local regulations indicate that the Legislature has completely occupied the field that CADL seeks to enter."[4] I would only add that this conclusion is strengthened with respect to colleges and universities inasmuch as the Legislature, in the concealed pistol license statute, has addressed the issue of concealed firearms on college campuses. Specifically, MCL 28.425o(1)(h) prohibits, with some exceptions, individuals with a concealed pistol license from carrying a concealed pistol in a college or university dormitory or classroom. This fact further reflects the Legislature's intent to preempt this field of regulation, even with respect to colleges and universities.

The majority attempts to distinguish *CADL* on the basis that it relied upon the fact that a district library is created by two local units of government, as defined in MCL 123.1101(1) and defendant here was not created by two local units of government. The majority relies on this Court's decision in *Mich Gun Owners, Inc v Ann Arbor Public Schools*,[5] to reject the field preemption argument. I respectfully submit that both the majority in this case and the Court in *Mich Gun Owners* ignore the binding precedent of *CADL* and violate the requirements of MCR 7.215(J)(1). As discussed above, this Court in *CADL* concluded that the Legislature intended to completely occupy the field of the regulation of firearm possession and prevent a patchwork of local regulations in the state. The fact that CADL was established by two local units of government establishes that it was itself a governmental agency subject to preemption.[6] It does not, however, limit the application of the field preemption doctrine to only those governmental entities created by two local units of government.

That is, once a court reaches the conclusion that field preemption applies, then it applies to all units of government that attempt to invade the Legislature's regulation of that field. Indeed, the entire concept of field preemption is that it demands "exclusive state regulation to achieve the uniformity necessary to serve the state's purpose or interest."[7] It is patently absurd to conclude that the Legislature intended to preempt an entire field of regulation, yet it only applies to some, but not all, governmental entities. That is, if certain governmental entities are

---

[2] 298 Mich App at 231.

[3] 401 Mich 314; 257 NW2d 902 (1977).

[4] 298 Mich App at 241.

[5] ___ Mich App ___; ___ NW2d ___ (2016), (Docket No. 329632, decided 12/15/2016), lv app pending.

[6] 298 Mich App at 231-232.

[7] *Llewellyn*, 401 Mich at 324.

allowed to impose their own regulations, then the field is not actually preempted and the Legislature's interest in establishing uniformity is defeated.

Accordingly, I conclude that our decision in *CADL* compels the conclusion that the Legislature has preempted the regulation of the field of firearm possession and that that decision applies to all units of government in Michigan subject to being preempted by state law. Thus, the question which must be decided in this case is whether the University of Michigan, because of its special constitutional status, is subject to preemption at all.[8]

The special status of the three "constitutional universities"[9] has been considered by the courts many times, including in *Federated Publications, Inc v Board of Trustees of Michigan State University*.[10] In *Federated Publications*, the Court considered whether the Open Meetings Act[11] applied to Michigan State University's presidential search committee or whether, because of MSU's special constitutional status, it was exempt from the legislation. The Court concluded that only the formal Trustees meeting at which the Board ultimately voted on the selection of the President was subject to the Open Meetings Act.[12] The Court explained that, while the Constitution grants a certain degree of autonomy to the universities, the universities are not exempt from all legislative enactments:

> This Court has long recognized that Const 1963, art 8, § 5 and the analogous provisions of our previous constitutions limit the Legislature's power. "The Legislature may not interfere with the management and control of" universities. [*Regents of the Univ of Michigan v Michigan*, 395 Mich 52, 65; 235 NW2d 1 (1975).] The constitution grants the governing boards authority over "the absolute management of the University, and the exclusive control of all funds received for its use." [*State Bd of Agriculture v Auditor General*, 226 Mich 417, 424; 197 NW2d 160 (1924).] This Court has "jealously guarded" these powers from legislative interference. *Bd of Control of Eastern Michigan Univ v Labor Mediation Bd*, 384 Mich 561, 565; 184 NW2d 921 (1971).
>
> This Court has not, however, held that universities are exempt from all regulation. In *Regents of the Univ of Michigan v Employment Relations Comm*, 389 Mich 96, 108; 204 NW2d 218 (1973), we quoted *Branum v Bd of Regents of the Univ of Michigan*, 5 Mich App 134, 138-139; 145 NW2d 860 (1966):

---

[8] I note that this is a different question than whether public schools are exempt from preemption. Thus, even if we were to conclude that the University of Michigan is not subject to preemption, *Mich Gun Owners* was nevertheless incorrectly decided because it failed to follow the binding precedent of *CADL*.

[9] University of Michigan, Michigan State University, and Wayne State University.

[10] 460 Mich 75; 594 NW2d 491 (1999).

[11] MCL 15.261 *et seq*.

[12] 460 Mich at 92.

"It is the opinion of this Court that the legislature can validly exercise its police power for the welfare of the people of this State, and a constitutional corporation such as the board of regents of the University of Michigan can lawfully be affected thereby. The University of Michigan is an independent branch of the government of the State of Michigan, but it is not an island. Within the confines of the operation and the allocation of funds of the University, it is supreme. Without those confines, however, there is no reason to allow the regents to use their independence to thwart the clearly established public policy of the people of Michigan."

Legislative regulation that clearly infringes on the university's educational or financial autonomy must, therefore, yield to the university's constitutional power.

The Court then goes on to consider its earlier decision in the *Regents*[13] case. The *Regents* case considered whether the University was subject to the Public Employees Relations Act[14] with respect to medical employees who formed a union. The *Federated Publications* opinion offered the following observation of the *Regents* case:

Thus, although a university is subject to the public employees relations act, MCL 423.201 *et seq.*; MSA 17.455(1) *et seq.*, the regulation cannot extend into the university's sphere of educational authority:

"Because of the unique nature of the University of Michigan . . . the scope of bargaining by [an association of interns, residents, and post-doctoral fellows] may be limited if the subject matter falls clearly within the educational sphere. Some conditions of employment may not be subject to collective bargaining because those particular facets of employment would interfere with the autonomy of the Regents. [*Regents,* 389 Mich at 109.]

The *Regents* decision itself used the example that PERA would require the University to negotiate the salaries of the unionized employees, but the University would not be required to negotiate whether interns could be required to work in the pathology department if the University determined that spending time in the pathology department was necessary to the interns' education.[15] The former does not invade the University's education autonomy, while the latter does.

Clearly, the decisions of our courts on this topic do not support a proposition that defendant has free reign to determine which enactments of the Legislature it chooses to follow and which it chooses to ignore. Nor does it grant the University the authority to enact criminal

---

[13] 389 Mich 96.

[14] MCL 423.201 *et seq.*

[15] *Regents*, 389 Mich at 109.

laws.  Turning to the issue at hand, I do not view applying preemption to the issue of firearm possession as invading either the University's educational or financial autonomy.  That is, by recognizing the Legislature's decision to preempt the field of firearm possession and keep to itself the enactment of those regulations, there is no invasion of the University's autonomy.  This is not, for example, a case of the Legislature mandating that all University students must take a course in firearm safety in order to be awarded a degree.  Nor has the Legislature mandated that the University expend money on such training for students who wish it.

For these reasons, I would reverse the trial court and hold that defendant exceeded its authority in enacting the restrictions on the possession of firearms on its campus.


/s/ David H. Sawyer