DAVIS v HILLSDALE COMMUNITY SCHOOL DISTRICT
WARNER v HILLSDALE COMMUNITY SCHOOL DISTRICT

Docket Nos. 199236, 199238. Submitted September 9, 1997, at Grand Rapids. Decided November 14, 1997, at 9:20 A.M.

Lori Davis, as next friend of James M. Meyer, a minor, brought an action in the Hillsdale Circuit Court against the Hillsdale Community School District, seeking a permanent injunction preventing the defendant from enforcing its decision to permanently expel Meyer for violating the defendant's policy prohibiting dangerous weapons on school grounds. The policy expressly provided that a BB gun is considered to be a firearm for purposes of application and enforcement of the policy. The court, Albert J. Neukom, J., entered an order granting a permanent injunction, finding that the defendant effectively had adopted MCL 380.1311; MSA 15.41311 when it established its dangerous-weapons policy and that the definition of a dangerous weapon in § 1311 did not include the BB gun that Meyer possessed on the school property. The defendant appealed. (Docket No. 199236.)

Laurie Warner, as next friend of Christopher Crall, a minor, brought an action in the Hillsdale Circuit Court against the Hillsdale Community School District, seeking the same relief for Crall, who was also involved in the incident involving Meyer and was expelled. The court, Albert J. Neukom, J., granted the request for the same reason. The defendant appealed. (Docket No. 199238.) The appeals were consolidated.

The Court of Appeals *held*:

1. The defendant had the authority to prohibit BB guns on school property. Section 1311 does not preempt the defendant's dangerous-weapons policy.

2. Section 1311 does not expressly prohibit a school board from expelling a student for possessing a BB gun on school property.

3. The defendant was acting within its broad discretion in promulgating a rule that mandates permanent expulsion for possession of a BB gun on school property. The circuit court's orders enjoining the defendant from enforcing its decision to expel Meyer and Crall must be reversed.

4. The matter must be remanded to allow the trial court to consider the plaintiffs' due process arguments.

Reversed and remanded.

1. SCHOOLS — WEAPONS — BB GUNS.

Schools boards have broad discretion to fashion rules relative to anything necessary for the proper establishment, maintenance, management, and carrying on of the public schools of the school district or public school academy, including regulations relative to the conduct of pupils while in attendance at school or en route to and from school; it is within a board's broad discretion to prohibit BB guns on school property (MCL 380.1300; MSA 15.41300).

2. SCHOOLS — WEAPONS — BB GUNS.

MCL 380.1311(2); MSA 15.41311(2), which permits a school board to expel permanently a pupil who possesses a dangerous weapon in a weapon-free zone, does not specify mandatory permanent expulsion for possession of a BB gun; however, it also does not expressly prohibit such action and a school board may promulgate a rule that mandates permanent expulsion for possession of a BB gun on school property.

*Dunham & Grassi, P.C.* (by *David F. Grassi*), for Lori Davis.

*Loren, Shirk & Snell* (by *Kevin G. Shirk*), for Laurie Warner.

*Thrun, Maatsch and Nordberg, P.C.* (by *Lisa L. Swem* and *Cheryl Takacs Bell*), for the defendant.

Before: GRIFFIN, P.J., and WAHLS and GRIBBS, JJ.

PER CURIAM. Defendant appeals as of right from orders permanently enjoining it from enforcing its decision to expel James Meyer[1] and Christopher

---

[1] The parties refer to James Meyer as "James Meyer (Davis)." The reason for this parenthetical is not entirely clear. We will refer to him simply as "Meyer."

Crall.[2] We reverse and remand for further proceedings.

On March 25, 1996, Meyer, Crall, and another young man possessed a BB gun on the grounds of Davis Middle School in the Hillsdale Community School District. All three were students at the school. Another student apparently saw the gun and reported the incident to school administrators, who in turn contacted the local police department. After an investigation and a disciplinary hearing, defendant expelled both Meyer and Crall. They both filed suit by their next friends, seeking to enjoin enforcement of their expulsions. The trial court eventually issued orders permanently enjoining defendant from enforcing the expulsions. Defendant appealed both orders, and we consolidated the appeals.

The only issue in this case involves the enforceability of defendant's "Dangerous Weapons in the Schools" policy. The policy in effect at the time of the incident stated, in pertinent part:

> The Board of Education of Hillsdale Community Schools, as both an employer and a public School District, is concerned with and interested in protecting the health, safety, and welfare of students, employees and visitors. The Board recognizes that school buildings, facilities, vehicles, grounds and other school property are best utilized in the educational process in the absence of threats to physical well-being and safety, by individuals possessing weapons and/or dangerous weapons.
>
> Accordingly, the Board of Education of Hillsdale Community Schools shall permanently expel a pupil from attending

---

[2] Meyer has apparently transferred to another school district, making defendant's appeal moot as it relates to him. However, because defendant raises identical issues with regard to both plaintiffs, Meyer's status does not affect this appeal.

school in the School District, if the pupil possesses a weapon in a weapon free school zone. Such expulsion is mandatory, unless the pupil establishes, in a clear and convincing manner, [that the pupil fits within one of four exceptions.]

* * *

*Definitions:*

"Weapon" or "dangerous weapon" includes: a firearm, gun, revolver, pistol, dagger, dirk, stiletto, knife with a blade over 3-inches in length, pocket knife opened by a mechanical device, iron bar, or brass knuckles.

"Weapon Free School Zone" means school property and/or a vehicle used by the school to transport students to or from school property.

"School property" means a building, playing field, or property used for school purposes to impart instruction to children or used for functions and events sponsored by a school, and includes the area up to 1000 feet surrounding school property.

"Firearm" means (a) a weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by an explosive, or by gas or air; (b) the frame or receiver of any such weapon; (c) any firearm muffler or firearm silencer; or (d) any destructive device, including explosives, incendiaries, poison gas, or any weapon which will (or may readily be converted to) expel a projectile by the action of an explosive or other propellant. *For purposes of application and enforcement of this policy, a* B-B *gun is considered to be a "firearm."*

*Legal References:*

MCL 28.421, 380.1311, 380.1313, 760.82, 750.237a, and 18 U.S.C. § 921. [Emphasis added.]

Here, the parties agree that Meyer and Crall possessed a BB gun on school property. Thus, it is clear that defendant's weapons policy mandates permanent expulsion for both of them. However, the trial court found that defendant was precluded from taking such

action. The trial court concluded that defendant effectively had adopted MCL 380.1311; MSA 15.41311 and was thereby bound by the definition of "firearm" found there. This conclusion apparently stemmed from defendant's reference to that statute in the "Legal References" section of its policy and from its reference to a "weapon free school zone" in the language of the policy. The trial court noted that the definition of "dangerous weapon" in MCL 380.1311; MSA 15.41311 does not include BB guns.[3] The trial court also noted that one of the other statutes listed in the "Legal References" section of the policy specifically excludes BB guns from the definition of "firearm." MCL 28.421(a); MSA 28.91(a). The trial court then concluded that defendant's policy was an impermissible expansion of MCL 380.1311; MSA 15.41311. In order to evaluate the trial court's decision, we must first determine the scope of defendant's power in this area.

School boards enjoy broad discretion in fashioning rules "relative to anything necessary for the proper establishment, maintenance, management, and carrying on of the public schools of the school district or public school academy, including regulations relative

---

[3] MCL 380.1311; MSA 15.41311 (§ 1311) does not set out a definition of "dangerous weapon." Instead, it refers to the definition in MCL 380.1313; MSA 15.41313 (§ 1313). MCL 380.1311(10)(c); MSA 15.41311(10)(c). The definition of "dangerous weapon" in § 1313 includes a firearm. MCL 380.1313(4); MSA 15.41313(4). The definition of "firearm" in § 1311 refers to the definition of that term in the federal Gun-Free Schools Act of 1994, 20 USC 3351. MCL 380.1311(10)(d); MSA 15.41311(10)(d). 20 USC 3351, in turn, refers to 18 USC 921, which defines "firearm" as "(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device." 18 USC 921(a)(3).

to the conduct of pupils while in attendance at school or en route to and from school." MCL 380.1300; MSA 15.41300.    See also MCL 380.1261;    MSA 15.41261, MCL 380.1312(8);    MSA 15.41312(8).    Indeed, such power is basic to the operation of schools. The court in *Davis v Ann Arbor Public Schools*, 313 F Supp 1217 (ED Mich, 1970), reviewed the relevant statutes[4] and gave an eloquent summation of a school district's powers:

> The school authorities, for their part, in order to carry out their important function, have both the inherent and the statutory power to maintain order and discipline in the schools and to exclude from the student body those who are detrimental to such body and whose conduct is inimical to the exercise of the institution's scholastic function.
>
> *          *          *
>
> The qualification imposed by law upon the above is that the authorities act neither arbitrarily nor capriciously. The schools deal with increasing numbers of students from all walks of life. The problems presented to the various schools differ widely. Consequently their powers in these areas are plenary, subject only to the qualifications we have noted. They must not only provide a suitable environment for study, and for relaxation, but must also uphold and protect the authority reposed in the teachers in the institution. Without these powers they have no power to guarantee the attainment of the education entrusted to them. Thus it is that the school authorities may and do formulate rules and regulations thought necessary or desirable for the maintenance of an orderly program of classroom learning and conduct. In so doing they have a wide latitude of discretion, subject only to the restriction of reasonableness. And so it

---

[4] While the statutes cited in *Davis* have since been amended and recodified in MCL 380.1311(1);   MSA 15.41311(1)   and MCL 380.1300;   MSA 15.41300,   there has been no substantial change in the powers of a school district.

is, also, that the courts do not rule upon the wisdom of the rules, or their expedience, but merely, as a substantive matter, when in issue, whether they are a reasonable use of authorities' power and discretion to maintain order and decorum by all appropriate means, including suspension and expulsion. [*Id.* at 1225-1226 (citations omitted).]

Thus, it is beyond question that defendant had the authority to prohibit BB guns on school property, as the trial court clearly recognized. The trial court apparently believed, however, that defendant could not prohibit BB guns on school property "under the guise of a weapon free zone." The trial court held that the Legislature's adoption of MCL 380.1311(2); MSA 15.41311(2) "took away any discretion from the school board when it came to weapons in this weapon free school zone." We believe that this conclusion was erroneous.

MCL 380.1311(2); MSA 15.41311(2) states, in pertinent part:

If a pupil possesses in a weapon free school zone a weapon that constitutes a dangerous weapon, commits arson in a school building or on school grounds, or commits criminal sexual conduct in a school building or on school grounds, the school board, or the designee of the school board as described in subsection (1) on behalf of the school board, shall expel the pupil from the school district permanently, subject to possible reinstatement under subsection (5). However, a school board is not required to expel a pupil for possessing a weapon if the pupil establishes in a clear and convincing manner [that the pupil fits within one of four exceptions.]

We assume, without deciding, that the trial court was correct that the definition of "dangerous weapon" in the statute does not include a BB gun. However, the statute does not expressly prohibit a school board

from expelling a student for possession of a BB gun on school property. Another panel of this Court articulated the relationship between the power of school boards and such statutory provisions:

> We believe that, absent a contrary statutory provision, a local school board has the inherent power to define disciplinable acts and to sanction teachers for violating school board policy. No single tradition in public education is more deeply rooted than local control over the operation of schools; local autonomy has long been thought essential both to the maintenance of community concern and support for public schools and to quality of the educational process. [*Widdoes v Detroit Public Schools*, 218 Mich App 282, 287; 553 NW2d 688 (1996) (citations and internal quotation marks omitted).]

While *Widdoes* dealt with regulations regarding teachers, rather than students, we believe that the same logic applies here. Thus, we believe that, in the absence of a contrary statutory provision, defendant has the power to mandate permanent expulsion for possession of a BB gun on school property.[5] Again, while MCL 380.1311(2); MSA 15.41311(2) does not specify mandatory permanent expulsion for possession of a BB gun, it does not expressly prohibit such action. Under these circumstances, defendant was within its broad discretion in promulgating a rule that mandates permanent expulsion for possession of a BB

---

[5] Plaintiffs both argue that MCL 380.1311(2); MSA 15.41311(2) preempts defendant's weapons policy. They argue that the Legislature's weapons policy precludes any further regulation of this area by school districts. However, as *Davis* and *Widdoes* make clear, a local school board's powers are "plenary," *Davis*, *supra* at 1226, and it may define disciplinable acts as it sees fit, "absent a contrary statutory provision," *Widdoes*, *supra* at 287. Thus, in this area, preemption simply does not apply; a school board's reasonable exercise of its powers is permissible unless it actually conflicts with an express statutory provision.

gun on school property. Thus, the trial court erred in enjoining enforcement of Meyer's and Crall's expulsions on the ground that defendant impermissibly expanded MCL 380.1311(2); MSA 15.41311(2), and we must reverse. Because the trial court did not consider plaintiffs' due process arguments, we remand so that it may do so.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.