# STATE OF MICHIGAN

# COURT OF APPEALS

MICHIGAN OPEN CARRY INC. and KENNETH HERMAN,

          Plaintiffs-Appellees,

v

CLIO AREA SCHOOL DISTRICT, FLETCHER SPEARS, III, and KATRINA MITCHELL,

          Defendants-Appellants.

FOR PUBLICATION
December 15, 2016
9:10 a.m.

No. 329418
Genesee Circuit Court
LC No. 15-104373-CZ

Before: K. F. KELLY, P.J., and GLEICHER and SHAPIRO, JJ.

PER CURIAM.

The issue presented is whether state law preempts Clio Area School District policies banning the possession of firearms in schools and at school-sponsored events. We hold that it does not, and reverse the judgment of the circuit court.

I

On June 5, 1996, defendant, Clio Area School District (CASD), promulgated policy 7217, which provides:

> The Board of Education prohibits visitors from possessing, storing, making, or using a weapon in any setting that is under the control and supervision of the Board including, but not limited to, property leased, owned, or contracted for by the Board, a school-sponsored event, or in a Board-owned vehicle.

> * * *

> The term "weapon" means any object which, in the manner in which it is used, is intended to be used, or is represented, is capable of inflicting serious bodily harm or property damage, as well as endangering the health and safety of persons. Weapons include, but are not limited to, firearms, guns of any type, including spring, air and gas-powered guns, (whether loaded or unloaded), that will expel a BB, pellet, or paint balls knives, razors, clubs, electric weapons, metallic knuckles, martial arts weapons, ammunition, and explosives or any other weapon described in 18 U.S.C. 921.

-1-

This prohibition applies regardless of whether the visitor is otherwise authorized by law to possess the weapon, including if the visitor holds a concealed weapons permit. The following are the exceptions to this policy:

A. weapons under the control of law enforcement personnel;

B. items approved by a principal as part of a class or individual presentation under adult supervision, if used for the purpose of and in the manner approved (working firearms and ammunition shall never be approved);

C. theatrical props that do not meet the definition of "weapon" above, used in appropriate settings;

D. starter pistols used in appropriate sporting events.

These restrictions shall not apply in the following circumstances to persons who are also properly licensed to carry a concealed weapon:

A. A parent or legal guardian of a student of the school may carry a concealed weapon while in a vehicle on school property, if s/he is dropping the student off at the school or picking up the student from the school and any person may carry a concealed weapon solely in the parking lot.

B. A county corrections officer, a member of a Sheriff's posse, a police or sheriffs reserve or auxiliary officer, or a State Department of Corrections parole or corrections officer, a private investigator, a Michigan State Police motor carrier officer or Capitol security officer, a State court judge, a security officer required by the employer to carry a concealed weapon while on the premises, a court officer

C. A retired police or law enforcement officer, a retired Federal law enforcement officer, or a retired State court judge.

Signs advising of this policy are placed at every CASD school and warn violators that they will be denied admittance.

In September 2013, plaintiff, Kenneth Herman, attempted to visit his child's elementary school while openly carrying a pistol for which he possessed a concealed pistol license. Herman claimed he was thereafter denied access to the school on several occasions in 2013 and 2014 for his open pistol possession. Finally, in November 2014, the CASD threatened to summon authorities if Herman again attempted to enter the building with his weapon.

As a result of these incidents, Herman and plaintiff, Michigan Open Carry, Inc., filed suit against the district and certain district officials. Plaintiffs' complaint asserts that Michigan law allows Herman to openly carry a pistol on school property because state law preempts a local unit of government from regulating the possession of firearms. According to plaintiffs, the CASD qualifies as a "local unit of government."

Defendants sought summary disposition, arguing that Michigan law confers on public school districts the right to address the safety and welfare of the students and prevent disruption to the educational environment by enacting policies such as that in question. Defendants also cited *Davis v Hillsdale Community Sch Dist*, 226 Mich App 375; 573 NW2d 77 (1997), for the proposition that a school district has plenary power to ban weapons from its premises. No state statute conflicts with this authority, the CASD urged, and caselaw governing preemption does not encompass the ability of school districts to regulate firearms on their premises.

Primarily relying on this Court's decision in *Capital Area Dist Library v Michigan Open Carry, Inc*, 298 Mich App 220; 826 NW2d 736 (2012) (*CADL*), contended that state law allows certain individuals to carry guns on school property in specific circumstances and preempts any attempts by local units of government to regulate firearms. Michigan's statutory regulation of firearms is so pervasive, plaintiffs insisted, that the entire firearms field is preempted and school districts are foreclosed from any rule-making regarding firearms. More specifically, plaintiffs asserted that the CASD policy contradicted and therefore was preempted by MCL 123.1102, which provides:

> A local unit of government shall not impose special taxation on, enact or enforce any ordinance or regulation pertaining to, or regulate in any other manner the ownership, registration, purchase, sale, transfer, transportation, or possession of pistols, other firearms, or pneumatic guns, ammunition for pistols or other firearms, or components of pistols or other firearms, except as otherwise provided by federal law or a law of this state.[1]

In resolving this case, the circuit court declared that "the outcome of this case is relatively simple." US Const, Am 2 and Const 1963, art I, § 6 entitle citizens to bear arms. But, the court noted, that right "is not unlimited." For example, in *District of Columbia v Heller*, 554 US 570, 626; 128 S Ct 2783; 171 L Ed 2d 637 (2008), the United States Supreme Court held that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings[.]"[2] The court continued:

> The Michigan [L]egislature has seen fit to pass certain laws limiting the right of individual[s] to possess firearms specifically with respect to the issue in this case, an individual shall not possess a concealed weapon in a weapons-free school zone, MCL [750.237a(1)]. An individual shall not possess a weapon in a weapons free school zone – that's MCL [750.237a(4)] – unless that individual is licensed to carry a concealed weapon, MCL [750.237a(5)]. An individual licensed to carry a concealed pistol shall not carry a concealed pistol on school

[1] The statute was amended to add pneumatic guns after *CADL* issued. See 2015 PA 29.

[2] On appeal, defendants cite *Heller* and posit that citizens do not have an unlimited Second Amendment right to possess arms on school property. The circuit court accepted that proposition and we need not address it further.

property; that's MCL [28.425o(1)(a)]; however, a parent or guardian licensed to carry a concealed pistol, may carry that pistol concealed while in a vehicle on school property either dropping the student off at school or picking the student up from school.

When you read this law as a whole and these statutes as a whole, these statutes do not prohibit an individual, who is licensed to carry a concealed pistol from openly possessing a pistol in a weapons free school zone. The Michigan Legislature evidently has not seen fit to completely prohibit individuals from possessing firearms on school property.

The circuit court distinguished the current case from *Davis*, noting that *Davis* permitted a school district to direct discipline of students possessing weapons, not to "do anything that it wants" to exclude pistols from its properties. And given the pervasive nature of the state statutes, the court rejected CASD's challenge against preemption.

In relation to plaintiffs' arguments, the court found *CADL* controlling. The court ruled that the school district was "a quasi-municipal corporation," just like the district library in *CADL*, rendering the cases "virtually identical." *CADL* "held that the Michigan Legislature has occupied the field of firearm regulation to such an extent that State law preempts a quasi-municipal corporation's attempts to regulate in that same field." Accordingly, the circuit court granted summary disposition and entered a declaratory judgment in plaintiffs' favor, thereby invalidating CASD's firearms ban. Defendants appeal that ruling.

II

We first address plaintiffs' contention that the CASD weapons policy directly contradicts MCL 28.425o, specifically subsection (1)(a), which provides in relevant part as follows:

(1) Subject to subsection (5), an individual licensed under this act to carry a concealed pistol, or who is exempt from licensure under [MCL 28.432a(1)(h)], shall not carry a concealed pistol on the premises of any of the following:

(a) A school or school property except that a parent or legal guardian of a student of the school is not precluded from carrying a concealed pistol while in a vehicle on school property, if he or she is dropping the student off at the school or picking up the student from the school. As used in this section, "school" and "school property" mean those terms as defined in . . . MCL 750.237a.

* * *

(5) Subsections (1) and (2) do not apply to any of the following:

(a) An individual licensed under this act who is a retired police officer, retired law enforcement officer, or retired federal law enforcement officer.

(b) An individual who is licensed under this act and who is employed or contracted by an entity described under subsection (1) to provide security services

-4-

and is required by his or her employer or the terms of a contract to carry a concealed firearm on the premises of the employing or contracting entity.

(c) An individual who is licensed as a private investigator or private detective under the professional investigator licensure act, 1965 PA 285, MCL 338.821 to 338.851.

(d) An individual who is licensed under this act and who is a corrections officer of a county sheriff's department or who is licensed under this act and is a retired corrections officer of a county sheriff's department, if that individual has received county sheriff approved weapons training.

(e) An individual who is licensed under this act and who is a motor carrier officer or capitol security officer of the department of state police.

(f) An individual who is licensed under this act and who is a member of a sheriff's posse.

(g) An individual who is licensed under this act and who is an auxiliary officer or reserve officer of a police or sheriff's department.

(h) An individual who is licensed under this act and who is any of the following:

(*i*) A parole, probation, or corrections officer, or absconder recovery unit member, of the department of corrections, if that individual has obtained a Michigan department of corrections weapons permit.

(*ii*) A retired parole, probation, or corrections officer, or retired absconder recovery unit member, of the department of corrections, if that individual has obtained a Michigan department of corrections weapons permit.

(i) A state court judge or state court retired judge who is licensed under this act.

(j) An individual who is licensed under this act and who is a court officer.

Plaintiffs argue that because MCL 28.425o(1)(a) addresses the right of concealed pistol license holders to carry a concealed pistol on school property in certain circumstances, CASD's policy banning weapons is expressly preempted.

We resolved this very issue in the companion case placed before this Court, *Michigan Gun Owners, Inc v Ann Arbor Public Schs*, ___ Mich App ___; ___ NW2d ___ (Docket No. 329632, issued _____), slip op at ___:

> We read the statute differently. MCL 28.425o(1)(a) imposes a blanket *prohibition* on carrying a concealed pistol on school grounds ("shall not") subject to certain specific and limited exceptions. The statute does not expressly forbid additional regulation, or declare that its subparts supersede any other school-

-5-

related firearm rules. More to the point, AAPS policy 5420 specifically references and acknowledges that MCL 28.425o controls the ability of concealed pistol license holders to carry a concealed pistol under the distinct circumstances conforming to the statute. We find no conflict between the statute and the AAPS policies, and thus no express preemption. Moreover, as discussed in greater detail in the next section, this statute's virtually categorical *limitation* of the presence of weapons in educational settings strongly implies that the Legislature intended this enactment to curtail the carrying of weapons in public schools.

The CASD policy does not expressly reference MCL 28.425o. However, it does provide exceptions to its ban consistent with the statute. We discern no conflict between the district policy and statute in this case either.

III

Defendants assert that its firearms policy is consistent with state law permitting school districts to make their schools "gun free zones." For this reason, *CADL* is readily distinguishable from the current action.

As provided in *Michigan Gun Owners*, ___ Mich App at ___, slip op at ___:

> As always, we begin with the language of the statute. In MCL 123.1101(b), the Legislature defined the term "local unit of government" to mean "a city, village, township, or county."[4] In *CADL*, this Court held that although a district library established pursuant to the District Library Establishment Act, MCL 397.171 *et seq.*, is not "a city, village, township, or county," a district library is "a quasi-municipal corporation" and therefore a "local unit of government." *CADL*, 298 Mich App at 231-232, 236. *CADL* reasoned that because a district library is established by two local units of government, it is swept within the reach of MCL 123.1102, which expressly prohibits the enactment of any regulation relating to the possession of firearms by "local units of government." *Id.* at 237.

> *CADL*'s holding rested on a judgment that district libraries are so closely akin to the local units of government listed in MCL 123.1101(b) that the same regulatory scheme should apply. In essence, the *CADL* Court determined that because the city and county that formed the Capital Area District Library were precluded from regulating firearms pursuant to MCL 123.1102, it made no sense to permit their stepchild—a library—from doing so. No corresponding parallels exist here. School districts are not formed, organized or operated by cities, villages, townships or counties, but exist independently of those bodies. "Leadership and general supervision over all public education, including adult education and instructional programs in state institutions, except as to institutions of higher education granting baccalaureate degrees, is vested in a state board of education." Const 1963, art 8, § 3. While a district library enjoys a general ability to "supervise and control" its property, MCL 397.182(1)(f), the Legislature has specifically allocated to school districts very broad powers of self-

-6-

governance, which specifically include "[p]roviding for the safety and welfare of pupils while at school or a school sponsored activity":

A general powers school district has all of the rights, powers, and duties expressly stated in this act; may exercise a power implied or incident to a power expressly stated in this act; and, except as provided by law, may exercise a power incidental or appropriate to the performance of a function related to operation of the school district in the interests of public elementary and secondary education in the school district, including but not limited to, all of the following:

(a) Educating pupils. In addition to educating pupils in grades K-12, this function may include operation of preschool, lifelong education, adult education, community education, training, enrichment, and recreation programs for other persons.

(b) Providing for the safety and welfare of pupils while at school or a school sponsored activity or while en route to or from school or a school sponsored activity. [MCL 380.11a.]

The close connection between district libraries and the cities or counties that established them informed *CADL*'s analysis of the *Llewellyn*[3] factors. The distinct differences between local units of government and school districts likewise influence our calculus and our conclusion that *CADL* does not govern this case.

---

4 At the time *CADL* issued, the pertinent definition was located in subsection (a) of the statute.

---

IV

The circuit court also committed clear legal error in accepting plaintiffs' claim that state law preempts school district policies against the possession of firearms. The *Llewellyn* framework guides our evaluation of this question, a framework the circuit court ignored in rendering judgment. And application of the *Llewellyn* factors counsels against a finding of field preemption.

---

3 *People v Llewellyn*, 401 Mich 314; 257 NW2d 902 (1977).

Again, as held by this Court in *Michigan Gun Owners*, ___ Mich App at ___:

> The first *Llewellyn* factor asks whether the state law cited as preemptive "expressly provides that the state's authority to regulate in a specified area of the law is to be exclusive[.]" *Llewellyn*, 401 Mich at 323. As we have stated, no such provision exists. It bears repeating that the statute on which plaintiffs rely does not reference schools or school districts in its list of "local units of government," despite that for many other purposes, the Legislature has explicitly identified school districts as "local units of government." See, e.g., MCL 550.1951 (including "school districts" within the definition of "local unit of government" in an act providing that certain entities are subject to the patient's right to independent review act); MCL 286.942(g) (including "school district[s]" within the definition of "local unit of government" for purposes of the Rural Development Fund Act); and MCL 123.381 (including "school district[s]" within the definition of "local unit of government" in an act concerning the construction of water and waste supply systems).
>
> The second *Llewellyn* factor requires us to consider legislative history.[5] Plaintiffs point to the House Legislative Analysis we cited in *CADL*, reciting that MCL 123.1102 "was designed to address the 'proliferation of local regulation regarding firearm ownership, sale, and possession' and the 'concern that continued local authority to enact and enforce gun control ordinances may result in the establishment of a patchwork of ordinances.' " *CADL*, 298 Mich App at 236. We find this fragment of legislative history useless, as it speaks to ordinances and local units of government rather than to schools. As no other legislative history has been presented to us, we conclude that this factor does not support preemption.
>
> The third *Llewellyn* factor concerns "the pervasiveness of the state regulatory scheme." Firearms are indeed pervasively regulated in Michigan. *Llewellyn*, 401 Mich at 323. In MCL 28.425a(5), the Legislature commanded that the legislative service bureau "compile the firearms laws of this state, including laws that apply to carrying a concealed pistol, and . . . provide copies of the compilation in an electronic format to the department of state police." That compilation is available to all at <https://www.legislature.mi.gov/Publications/Firearms.pdf> (accessed November 30, 2016). The statutes referencing firearms consume almost 200 pages of paper. Included are several provisions in the revised school code, MCL 380.1 *et seq.* For example, MCL 380.1163 requires schools to develop "model gun safety instruction program[s]." MCL 380.1311(2) permits a school board to expel a pupil who "possesses in a weapon free school zone a weapon that constitutes a dangerous weapon[.]" MCL 380.1313(2) authorizes a school official to confiscate a dangerous weapon in the possession of a pupil. And the full compilation includes MCL 28.425o(1)(a), which we cited above, as well as penal statutes such as MCL 750.234d, which provides:
>
> > (1) Except as provided in subsection (2), a person shall not possess a firearm on the premises of any of the following:

(a) A depository financial institution or a subsidiary or affiliate of a depository financial institution.

(b) A church or other house of religious worship.

(c) A court.

(d) A theatre.

(e) A sports arena.

(f) A day care center.

(g) A hospital.

(h) An establishment licensed under the Michigan liquor control act, [MCL 436.1 to MCL 436.58].

(2) This section does not apply to any of the following:

(a) A person who owns, or is employed by or contracted by, an entity described in subsection (1) if the possession of that firearm is to provide security services for that entity.

(b) A peace officer.

(c) A person licensed by this state or another state to carry a concealed weapon.

(d) A person who possesses a firearm on the premises of an entity described in subsection (1) if that possession is with the permission of the owner or an agent of the owner of that entity.

(3) A person who violates this section is guilty of a misdemeanor punishable by imprisonment for not more than 90 days or a fine of not more than $100.00, or both.[6]

Yet another penal statute relevant to this case addresses "weapon free school zones," which are defined as "school property and a vehicle used by a school to transport students to or from school property."  MCL 750.237a(6)(e). This statute sets out penalties for individuals who engage in firearm offenses in a weapon free school zone, and specifically provides that "an individual who possesses a weapon in a weapon free school zone is guilty of a misdemeanor[.]" MCL 750.237a(4).  This subsection does not apply, however, to individuals licensed to carry a concealed weapon, a "peace officer," or certain designated others.  MCL 750.237a(5).

Given this panoply of firearm laws, we most certainly agree that firearms are pervasively regulated in Michigan. But this fact, standing alone, does not compel us to imply preemption. "While the pervasiveness of the state regulatory scheme is not generally sufficient by itself to infer pre-emption, it is a factor which should be considered as evidence of preemption." *Llewellyn*, 401 Mich at 324. Here, relevant segments of a multifaceted statutory framework evince the Legislature's intent to *prohibit* weapons in schools, rather than to rein in a district's ability to control the possession of weapons on its campuses.

Among the statutes regulating firearms complied by the legislative service bureau are 26 different laws specifically referencing "weapon free school zones." These four words telegraph an unmistakable objective regarding guns and schools; indeed, we find it hard to imagine a more straightforward expression of legislative will. The Legislature contemplated that this repeatedly invoked phrase would be interpreted to mean exactly what it says—no weapons are allowed in schools. Viewing the AAPS policies against this statutory backdrop, we infer that firearm policies consistent with the "weapon free school zone" concept are unobjectionable. Field preemption analysis does not permit us to ignore this statutory language simply because there are many statutes regulating firearms. To the contrary, the pervasiveness of the Legislature's use of the phrase "weapon free school zones" presses against the preemption of a district policy affirming that its schools will remain "weapon-free".

*Llewellyn*'s fourth factor asks whether "the nature of the regulated subject matter may demand exclusive state regulation to achieve the uniformity necessary to serve the state's purpose or interest." *Id*. at 324. Given that the Legislature has never expressly reserved to itself the ability to regulate firearms in schools, our evaluation of this factor requires us to weigh policy choices.

Plaintiffs insist that a "patchwork" of differing school policies will create "confusion" and will "burden" the police and the public. We find no merit in this argument. The Legislature has broadly empowered school districts to "[p]rovid[e] for the safety and welfare of pupils while at school or a school sponsored activity or while en route to or from school or a school sponsored activity." Indisputably, the Legislature recognized that different school districts would employ different methods and strategies to accomplish this goal. Most parents of school-age children send those children to schools located within a single school district. Most parents easily learn and adapt to the policies and procedures applicable to their children's schools and district. We discern no possibility of meaningful "confusion" or burdening of law enforcement. To the contrary, the AAPS policy ensures that the learning environment remains uninterrupted by the invocation of emergency procedures which would surely be required each and every time a weapon is openly carried by a citizen into a school building.

-10-

[5] We note that in the almost 40 years that have passed since our Supreme Court's decision in *Llewellyn*, the Supreme Court's views regarding the propriety of judicial reliance on legislative history have changed considerably. For example, in *People v Gardner*, 482 Mich 41, 57; 753 NW2d 78 (2008), the Court discussed the many "problems inherent in preferring judicial interpretation of legislative history to a plain reading of the unambiguous text," and expressed a decided preference for "historical facts" about "the Legislature's affirmative acts" rather than "staff analyses of legislation." *Id.* "[R]esort to legislative history of any form is proper *only* where a genuine ambiguity exists in the statute. Legislative history cannot be used to create an ambiguity where one does not otherwise exist." *In re Certified Question from US Court of Appeals for Sixth Circuit*, 468 Mich 109, 115, n 5; 659 NW2d 597 (2003) (emphasis in original).

[6] Despite that MCL 750.234(2)(c) permits concealed weapon holders to carry concealed weapons in "[a] court," our Supreme Court has promulgated an administrative order barring the presence of *all* weapons in court facilities unless approved by the chief judge. Michigan Supreme Court Administrative Order 2001-1. Many circuit courts have issued their own policies banning the presence of weapons. See, e.g., <https://www.oakgov.com/courts/circuit/Documents/ao/2012-06J.pdf> (accessed November 30, 2016).

---

V

However, we must note our agreement with the circuit court's conclusion that *Davis* is not applicable to the current matter. In *Davis*, 226 Mich App at 377-378, the Hillsdale Community School District (HCSD) implemented a policy requiring expulsion of students found in possession of a "weapon in a weapon free school zone." BB guns fell within the district policy's definition of "weapon" or "dangerous weapon." *Id.* at 378. Two students expelled for BB gun possession filed suit, complaining that the policy conflicted with and therefore was preempted by MCL 380.1311. *Davis*, 226 Mich App at 378-379. The statute mandated expulsion of students possessing weapons on school grounds, but did not specifically include BB guns within the definition of subject weapons. *Id.* at 379 and n 3.

The circuit court accepted the preemption argument, but this Court reversed. *Id.* at 379, 381. In doing so, this Court reasoned that local school boards have " 'inherent power to define disciplinable acts . . . .' " and manage student behavior. *Id.* at 382, quoting *Widdoes v Detroit Pub Schs*, 218 Mich App 282, 287; 553 NW2d 688 (1996). There is no precedent establishing a

school district's inherent power to direct the behavior of nonstudent citizens.  Given the vastly different interests at play, we cannot adopt defendants' claim that *Davis* controls the preemption question in this case.

We reverse.


/s/ Kirsten Frank Kelly
/s/ Elizabeth L. Gleicher
/s/ Douglas B. Shapiro