*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

LINDA LANE, CHARLES R. DEVRIES, and
THOMAS J. LANE,[1]

      Plaintiffs/Counter-Defendants-
      Appellants/Cross-Appellees,

v

GRATTAN TOWNSHIP and GREGG CONVERSE,

      Defendants/Counter-Plaintiffs-
      Appellees/Cross-Appellants.

UNPUBLISHED
May 18, 2023

No.   360941
Kent Circuit Court
LC No.   20-003959-AW

Before:  CAMERON, P.J., and K. F. KELLY and M. J. KELLY, JJ.

PER CURIAM.

Plaintiffs Linda Lane, Charles R. Devries, and Thomas J. Lane,[1] appeal as of right the order denying their partial motion for summary disposition under MCR 2.116(C)(9) and (10), and granting summary disposition in favor of defendants, Grattan Township ("the township") and Gregg Converse under MCR 2.116(I)(2).  On cross-appeal, defendants appeal as of right the order denying their motion for attorney fees.  We affirm.

## I.  BACKGROUND FACTS AND PROCEDURAL HISTORY

Linda and Charles own several parcels of land near Big Crooked Lake in Grattan Township, Michigan.  These include one undeveloped, 3.62-acre parcel (Parcel A) and two small lakefront parcels.  Thomas owns an adjacent parcel (Parcel B).  This case arises from plaintiffs' attempt to change boundary lines and transfer ownership of Parcels A and B.  Plaintiffs wanted to transfer a portion of Parcel A to Parcel B, effectively reducing the size of Parcel A and enlarging the size of Parcel B.  To accomplish this goal, plaintiffs filed a quitclaim deed purporting to change

---

[1] Charles and Linda are husband and wife.  Thomas is Linda's brother.

the boundary lines of Parcels A and B. The deed also apparently conveyed ownership of a portion of Parcel A from Linda and Charles to Linda, Charles, and Thomas.

Sometime after they filed the quitclaim deed, plaintiffs submitted to the township a "Land Division/Combination Application" (the "land-division application"), seeking approval of their boundary line adjustments. In reviewing the application, the township asked plaintiffs for a number of documents, including surveys of the two lakefront parcels belonging to Linda and Charles. Believing the lakefront parcels were irrelevant to their proposed changes to Parcels A and B, plaintiffs never produced these surveys.

Plaintiffs filed this lawsuit, asking the trial court for declaratory relief that the transfer of land was valid under Michigan's Land Division Act (the "LDA"), MCL 560.101 *et seq.*, and for a writ of mandamus compelling the township to act on their land-division application. Defendants filed a counterclaim, which included a demand for attorney fees and costs. Plaintiffs moved for partial summary disposition, again contending their actions were permissible under the LDA and that the LDA preempted any local ordinances. Defendants responded, arguing they were entitled to summary disposition under MCR 2.116(I)(2). In their view, plaintiffs failed to exhaust their administrative remedies before seeking relief in the trial court. They also challenged plaintiffs' assertion the LDA preempted their local ordinances. During the pendency of these events, the township enacted a new zoning ordinance, entitling the township to attorney fees "[s]hould the Township prevail in a Kent Circuit Court lawsuit." Grattan Township Zoning Ordinance, § 19.07(G).

The trial court entered an order denying plaintiffs' partial motion for summary disposition and granting summary disposition in defendants' favor. The trial court reasoned that plaintiffs failed to exhaust their administrative remedies and that the LDA does not preempt local ordinances. The trial court ordered plaintiffs to recombine Parcels A and B to their original state, i.e., to what they were before the quitclaim deed was filed. It further granted defendants' motion for costs, but denied it as to attorney fees. This appeal followed.

## II. PREEMPTION

Plaintiffs argue the trial court erred in concluding the LDA did not preempt the township's land-division ordinances. We disagree.

## A. STANDARD OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo. *Heaton v Benton Constr Co*, 286 Mich App 528, 531; 780 NW2d 618 (2009). Plaintiffs moved for summary disposition under MCR 2.116(C)(9) and (10). A motion for summary disposition under MCR 2.116(C)(9) "tests the sufficiency of a defendant's pleadings." *Slater v Ann Arbor Pub Sch Bd of Ed*, 250 Mich App 419, 425; 648 NW2d 205 (2002). A trial court "properly grants summary disposition where a defendant fails to plead a valid defense to a claim." *Id*. In deciding a (C)(9) motion for summary disposition, "a court may look only to the parties' pleadings," which "include only a complaint, a cross-claim, a counterclaim, a third-party complaint, an answer to any of these, and a reply to an answer." *Village of Dimondale v Grable*, 240 Mich App 553, 565; 618 NW2d

23 (2000). Further, "[a] motion for summary disposition is not a responsive pleading under MCR 2.110(A)." *Id*.

A (C)(10) motion for summary disposition examines the factual sufficiency of a complaint and should be granted "[w]here the proffered evidence fails to establish a genuine issue regarding any material fact." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). "In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties . . . in the light most favorable to the party opposing the motion." *Id*.

Defendants also moved for summary disposition under MCR 2.116(I)(2), which is appropriate "[i]f it appears to the court that the opposing party, rather than the moving party, is entitled to judgment . . . ." MCR 2.116(I)(2).

The trial court did not state the specific subsection under which it denied plaintiffs' partial motion for summary disposition. However, it apparently resolved this issue under subsection (C)(9) because it solely analyzed the parties' legal arguments, and it did not engage in a fact-balancing analysis required of a motion for summary disposition under subsection (C)(10). Therefore, we review this issue through the lens of a (C)(9) motion for summary disposition.

This issue also involves the interpretation of statute and local ordinances—specifically, whether the LDA preempts the township's land-division ordinances. "Whether a state statutory scheme preempts a local regulation is a question of statutory interpretation and, thus, a question of law that we review de novo." *Capital Area Dist Library v Mich Open Carry, Inc*, 298 Mich App 220, 227; 826 NW2d 736 (2012). "When courts interpret statutes, they must first look to the specific statutory language to determine the intent of the Legislature, and if the language is clear and unambiguous, the plain meaning of the statute reflects the legislative intent and judicial construction is not permitted." *Grand Rapids v Brookstone Capital, LLC*, 334 Mich App 452, 459; 965 NW2d 232 (2020).

## B. LAW AND ANALYSIS

Municipalities are generally free to regulate matters of local concern unless state law preempts local regulation. *DeRuiter v Twp of Byron*, 505 Mich 130, 140; 949 NW2d 91 (2020). "A state statute preempts regulation by an inferior government when the local regulation directly conflicts with the statute or when the statute completely occupies the regulatory field." *USA Cash #£1, Inc v City of Saginaw*, 285 Mich App 262, 267; 776 NW2d 346 (2009). Plaintiffs argue there is a direct conflict between the LDA and the township's land-division ordinances. "[A] direct conflict exists when the ordinance permits what the statute prohibits or the ordinance prohibits what the statute permits." *DeRuiter*, 505 Mich at 140 (quotation marks and citation omitted).

At issue are two different definitions of the term "division." The LDA defines "division" as:

[T]he partitioning or splitting of a parcel or tract of land by the proprietor thereof or by his or her heirs, executors, administrators, legal representatives, successors, or assigns for the purpose of sale, or lease of more than 1 year, or of building development that results in 1 or more parcels of less than 40 acres or the equivalent,

-3-

and that satisfies the requirements of sections 108 and 109. *Division does not include a property transfer between 2 or more adjacent parcels, if the property taken from 1 parcel is added to an adjacent parcel*; and any resulting parcel shall not be considered a building site unless the parcel conforms to the requirements of this act or the requirements of an applicable local ordinance. [MCL 560.102(d) (emphasis added).]

The definition of "division" in the land-division ordinances is:

[T]he dividing, partitioning or splitting of a parcel or tract of land by the owner or proprietor thereof or by his or her heirs, executors, administrators, legal representatives, successors or assigns for the purpose of sale, transfer, parcel or lot creation, or lease of more than one year, or of building development that results in one or more parcels. Division or land division also includes the creation or establishing of an access easement or other access to land, and the dividing, partitioning or splitting of a parcel or tract of land for the purpose of adjusting or relocating one or more boundary lines, or *transfer of land between lots or parcels*. [Grattan Township Land Division and Access Ordinance, § 2.4 (emphasis added).]

Again, to determine whether there is a direct conflict between a statute and an ordinance, courts should consider whether "the ordinance permits what the statute prohibits or the ordinance prohibits what the statute permits." *DeRuiter*, 505 Mich at 140 (quotation marks and citation omitted). Plaintiffs argue the ordinance is preempted because it prohibits what the statute permits. They opine the statute's definition of the term "division" allows the "unrestricted transfer of land" between parcels; but, by defining "division" differently, the ordinance prohibits such transfers.

We disagree with plaintiffs' suggestion that MCL 560.102(d) permits plaintiffs to make "unrestricted transfer[s] of land." Indeed, one of the stated purposes of the LDA is to ensure "the orderly layout and use of land." Title of 1967 PA 288. Plaintiffs' assertion the LDA unilaterally permits "unrestricted transfer[s] of land" runs contrary to that purpose.

We also disagree that a definition is a sufficient basis to decide "what the statute permits." The purpose of MCL 560.102(d) is not to describe the strictures of that particular scheme, but to offer the reader some context for the statute. In practice, this means that when a reader encounters a particular term in the substantive portion of the statutory scheme, they may insert the referenced definition to read the term in context. Here, the issue is the definition of the word "division." It is an analytical reach to suggest MCL 560.102(d) explicitly permits the "unrestricted transfer of land" because the purpose of that subsection is to provide the reader a greater understanding of "division" in context of the statutory scheme.

Other than the definitional section, plaintiffs cite no statutory provision prohibiting "property transfer[s] between 2 or more adjacent parcels." A locality is given broad regulatory authority and, as such, is permitted to add conditions beyond what is required by statute, so long as the conditions do not contradict the statute. *DeRuiter*, 505 Mich at 144-145; *Charter Twp of Delta v Dinolfo*, 419 Mich 253, 263; 351 NW2d 831 (1984). The LDA has many requirements pertaining to the "division" of property. See, e.g, MCL 560.108. But, those requirements are inapplicable to plaintiffs' property transfer because there is nothing in the LDA which specifically

regulates this transfer of land. By contrast, the quitclaim deed is contemplated by the ordinance because it involves the "transfer of land between lots or parcels." Grattan Township Land Division and Access Ordinance, § 2.4. Obviously, the language of the ordinance exceeds the language of the statute. This is permissible because, as discussed above, the LDA does not prohibit transfers of this nature.

In sum, plaintiffs incorrectly suggest the LDA permits the "unrestricted transfer of lands." And, the statute does not preempt the ordinance. Rather, the statute defines the term "division" so it is understood in the context of the statutory scheme. Plaintiffs do not point to any substantive use of the term "division" which contradicts the township's interpretation. Townships are free to enact regulations which exceed the language of a statute. Although the LDA uses the term "division" in a more limited fashion, that does not mean the township could not enact a broader definition of the term. Because plaintiffs have presented no evidence that the land-division ordinance does not apply to them, we reject plaintiffs' argument to the contrary.

## III. ADMINISTRATIVE REMEDIES

Plaintiffs next argue the trial court incorrectly concluded they failed to exhaust their administrative remedies. In their view, the trial court failed to recognize that their land-division application was complete, and therefore reviewable by the township. Plaintiffs claim that, because the township failed to timely review their land-division application, they were not subject to the exhaustion requirements of the land-division ordinance. We disagree.

## A. STANDARD OF REVIEW

As discussed, plaintiffs moved for partial summary disposition under MCR 2.116(C)(9) and (10), but the trial court did not specify the subsection under which it denied the motion. The trial court resolved plaintiffs' motion for summary disposition, in part, because plaintiffs failed to exhaust their administrative remedies and no exception existed to circumvent the necessity of seeking administrative remedies. A dismissal on the basis of the failure to exhaust administrative remedies is essentially a dismissal for lack of jurisdiction because a circuit court lacks jurisdiction over a matter which could have been resolved through administrative channels. See *Connell v Lima Twp*, 336 Mich App 263, 282; 970 NW2d 354 (2021) (quotation marks and citation omitted) ("As this Court has repeatedly recognized, when an administrative scheme of relief exists an individual must exhaust those remedies before a circuit court has jurisdiction."). Neither the trial court nor the parties made this distinction. And, at no point in the lower court proceedings did the trial court explicitly consider that it might lack jurisdiction over this case.

Although the parties did not present this argument as a "jurisdictional" issue, a court's jurisdiction over a matter is always at issue. *Clohset v No Name Corp*, 302 Mich App 550, 560; 840 NW2d 375 (2013) (quotation marks, alterations, and citation omitted) ("All courts must, upon challenge, or even sua sponte, confirm that subject-matter jurisdiction exists."). Therefore, we must consider the issue through this lens. Jurisdictional questions are reviewed de novo. *PIC Maintenance, Inc v Dep't of Treasury*, 293 Mich App 403, 407; 809 NW2d 669 (2011). "[T]his Court must determine whether the affidavits, together with the pleadings, depositions, admissions, and documentary evidence, demonstrate a lack of subject matter jurisdiction." *Id*. (quotation marks, alterations, and citation omitted).

Plaintiffs also argue on appeal the trial court incorrectly found their land-division application was complete. Unlike the legal question of jurisdiction, the question of whether the application was complete is a factual question subject to analysis under MCR 2.116(C)(10). Again, "[i]n evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties . . . in the light most favorable to the party opposing the motion." *Maiden*, 461 Mich at 120. Under the burden-shifting framework of this rule,

> [T]he moving party has the initial burden of supporting its position by affidavits, depositions, admissions, or other documentary evidence. The burden then shifts to the opposing party to establish that a genuine issue of disputed fact exists. Where the burden of proof at trial on a dispositive issue rests on a nonmoving party, the nonmoving party may not rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists. If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted. [*Quinto v Cross & Peters Co*, 451 Mich 358, 362-363; 547 NW2d 314 (1996) (citations omitted).]

## B. LAW AND ANALYSIS

"[W]hen an administrative scheme of relief exists an individual must exhaust those remedies before a circuit court has jurisdiction." *Connell*, 336 Mich App at 282. "The doctrine of exhaustion of administrative remedies requires that where an administrative agency provides a remedy, a party must seek such relief before petitioning the court." *Cummins v Robinson Twp*, 283 Mich App 677, 691; 770 NW2d 421 (2009). "The converse, however, is that where the administrative appellate body cannot provide the relief sought, the doctrine does not apply." *Id*.

In Grattan Township, local ordinance regulates the process an applicant must undergo to receive approval of a land division. The relevant ordinances state, in part:

> 4.1    A proposed land division shall be filed with the administrator and shall include the following:
>
> * * *
>
> (g) Other information reasonably required by the administrator in order to determine whether the proposed land division or creation of land access qualifies for approval, including, though not limited to, a survey required by the administrator in order to verify the accuracy or completeness of the land descriptions provided for parent parcels, parent tracts, resulting parcels and access easements or other means of access.
>
> 4.2    A proposed division shall not be considered filed with the Township, nor shall the time period stated in subsection 5.2 commence, until all of the requirements for an application for land division and access approval have been complied with, including all required approvals of private roads or other access, site development plans, lot area, lot width, access to bodies of water and land

divisions for certain large-scale residential developments, under the terms of the Township Zoning Ordinance. [Grattan Township Land Division and Access Ordinance, §§ 4.1(g) and 4.2.]

Section 5 of the township's land-division ordinances explain the process after the applicant has submitted their documentation:

5.1    A proposed land division shall be approved by the administrator upon satisfaction of all of the following requirements:

(a) The application requirements of Section 4.

* * *

(g) All applicable required Township approvals of private roads or other access; site development plans; lot area; lot width; planned unit development approval of certain large-scale residential developments; and access to bodies of water, all under the terms of the Township Zoning Ordinance.

5.2    If all of the requirements of Section 5 have been satisfied, the administrator shall approve or disapprove a proposed land division within 45 days after the complete filing of the proposed division with the administrator, including the filing of evidence of all other Township approvals required by the terms of this Ordinance. The administrator shall provide the person who filed the application written notice whether the application is approved or disapproved and, if disapproved, all the reasons for the disapproval.

* * *

5.4    An applicant aggrieved by the decision of the administrator may, within 30 days of the decision, file a written appeal of the decision to the Township Board, which shall consider and decide the appeal by a majority vote of the members present and voting at a public meeting. At least ten days' written notice of the date, time and place of the meeting at which the appeal is to be considered shall be given to the applicant by regular, first-class mail, directed to the applicant's address as shown in the application or in the written appeal. The Township Board may affirm or reverse the decision of the administrator, in whole or in part, and its decision shall be final.

* * *

5.6    No parcel (including a remnant parcel) shall be created that does not fully comply with the minimum lot size, access, lot width to depth ratio requirements, and other dimensional requirements of the Grattan Township Zoning Ordinance, as amended. [Grattan Township Land Division and Access Ordinance, §§ 5.1(a) and (g), 5.2, 5.4, and 5.6.]

Plainly, the township's ordinances provide an administrative process to approve or deny land division applications. There is also a process to appeal a denial of a land division application. Accordingly, plaintiffs needed to avail themselves of this process before seeking relief in the trial court. Therefore, the trial court did not err in dismissing plaintiffs' complaint on this basis.

On appeal, plaintiffs appear to acknowledge the above process and that there are administrative remedies when a land division request is denied. However, they contend they could not avail themselves of the administrative process because the township never considered their land-division application "complete." They argue that summary disposition was inappropriate because there remained a genuine question of fact whether their application was complete.

In the proceedings below, this argument specifically concerned the township's request that plaintiffs produce surveys and other documentation related to the two lakefront parcels owned by Linda and Charles. The issue of the two lakefront parcels was not addressed in plaintiffs' motion for partial summary disposition. In their response to plaintiffs' motion for summary disposition, defendants contended that they were never obligated to review plaintiffs' application because the application was not complete. They said:

> The Township required surveys for two lakefront parcels that the Township believed had been joined with [Parcel A] and [Parcel B]. The [township's] Land-division ordinance requires an applicant for a land division permit to submit a tentative parcel map, which includes the proposed lines and dimensions of each resulting parcel, and an accurate legal description of each resulting parcel.

The parties discussed the issue at oral argument, after which the trial court offered the parties an opportunity for further briefing. Plaintiffs did not respond with any brief addressing this issue. Rather, they submitted to the trial court an affidavit by their attorney, which asserted, in part:

3. On May 10, 2020, [defendants' attorney] demanded that surveys for additional properties be submitted . . . and again on Mary [sic] 29, 2020 . . . .

4. On May 11, 2020, [plaintiffs' attorney] responded by e[-]mail to [defendants' attorney] . . . informing him that there was no basis for asking for the additional surveys. The e[-]mail concluded with the following:

> I look forward to your response. If there is a provision in the zoning ordinance that brings additional parcels into consideration of a boundary line adjustment between two parcels, I would appreciate being advised of that.

5. Neither [defendants' attorney] or [sic] the Township has ever responded to the request to define the statute that provided for the additional request.

6. On June 5, 2020, I succinctly wrote in correspondence to [defendants' attorney] that the Township had everything it needed—specifically dispelling the notion that the Township was entitled to review all properties owned by a taxpayer when the only two properties involved had already

been submitted.  I concluded that letter with the following statement indicating that everything that was necessary for the application had been submitted:

> In short, it appears to me that the Township has everything that it needs and that this should have been approved through a simple administrative approval—something that I would have anticipated in most other townships.

7. To date, the Township has not provided a reference to any section in the ordinance that allows additional information to be required, nor provided any justification as to their ultra vires demand for additional surveys.

* * *

11. Mr. [Gregg] Converse [the township's zoning administrator] could not identify any incompleteness in the Application.  He could not identify a definition of "adjoining" in the Township's Land Division and Access Ordinance.  He advanced the common understanding of "adjoining" as meaning parcels that touched each other.

12. [Converse] confirmed that "both lakefront parcels" (referred to in [defendants' attorney's] e[-]mail of April 15, 2020 was not adjoining any of the parcels referenced in the Application [sic].

13. Unfortunately, the Township's approach lends credibility to the Plaintiffs' perception that all the Township is looking for is methods to delay the Plaintiffs and to increase their costs while seeking to create a façade of plausible deniability for the Township's motivation.

Attached to the affidavit were some of the e-mail exchanges between the parties' attorneys discussing the township's request for documentation related to the lakefront lots.  These exhibits did not include Converse's deposition testimony, which presumably is the source of the referenced statements.

Defendants filed a supplemental briefing that, again, argued plaintiffs' application was not complete because they failed to submit any information related to the lakefront parcels.  They cited Grattan Township Zoning Ordinance, § 4.04(D), which provides, in part:

> [I]n all zoning districts, if two or more lots or combination of lots or portions of lots are located adjacent to each other or have contiguous frontage and are held or owned in the same or single ownership of record, and if all or part of such lots do not satisfy the minimum requirements for lot width, lot area, street frontage, water frontage, or other dimensions, such lots shall be automatically combined for zoning purposes so as to create one conforming lot or so as to create one nonconforming lot that is more conforming than the individual, smaller nonconforming lots.  Once nonconforming lots or parcels of land are combined pursuant to this Section D or by deed, land contract or other written instrument,

they shall not thereafter be split, re-divided or otherwise reduced in area unless all of the resulting lots or parcels of land comply with the lot area requirements of the zoning district in which such lots or parcels of land are located.

According to defendants, to properly assess plaintiffs' land-division application, they needed information about the two lakefront parcels to determine whether these parcels were automatically combined with Parcels A and B. Attached to defendants' supplemental brief were maps of the relevant parcels and the applicable ordinances.

To prevail on this issue, plaintiffs needed to show a genuine question of fact whether evidence of the lakefront parcels was necessary to their land division application. *Quinto*, 451 Mich at 362-363. To that end, plaintiffs only produced their attorney's affidavit. Generally-speaking, an affidavit is a document that courts may use to determine whether there is a question of fact. *Maiden*, 461 Mich at 120. However, the affidavit by plaintiffs' attorney was an impermissible use of this rule. Plaintiffs filed the affidavit to both make a legal argument *and* offer the court documentary evidence of a question of fact. "But it is well settled that an attorney's statements and arguments are not evidence." *In re Conservatorship of Brody*, 321 Mich App 332, 349; 909 NW2d 849 (2017). Yet, even if this affidavit was evidence, it failed to demonstrate a question of fact. While plaintiffs' attorney claimed that evidence of the lakefront parcels was not relevant and "that the Township had everything it needed" to approve plaintiffs' application, plaintiffs failed to provide any evidence of the same.

As the moving party, plaintiffs were required to offer documentary evidence showing no genuine dispute of fact. *Quinto*, 451 Mich at 362-363. Plaintiffs failed in this regard, so the burden never shifted to defendants to establish that a genuine issue of disputed fact exists. However, even if it had shifted, defendants offered documentary proof showing the lakefront parcels may be joined to Parcels A or B under the township's ordinances and the trial court was required to view this evidence in a light most favorable to defendants. Accordingly, the trial court did not err in disregarding plaintiffs' argument about the completeness of the application because plaintiffs failed to show a genuine dispute of fact as to this issue.

## IV. ATTORNEY FEES

Defendants argue the trial court abused its discretion in denying the portion of their motion requesting attorney fees. In their view, they were entitled to attorney fees because plaintiffs' complaint was frivolous and because the township's zoning ordinances required the imposition of attorney fees. We disagree.

## A. STANDARD OF REVIEW

"A trial court's award of attorney fees is reviewed for an abuse of discretion, which occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Lakeside Retreats LLC v Camp No Counselors LLC*, 340 Mich App 79, 88; 985 NW2d 225 (2022) (quotation marks and citation omitted). This Court reviews for clear error the trial court's factual findings. *Id.* Further, "[a]n error of law necessarily constitutes an abuse of discretion." *Denton v Dep't Of Treasury*, 317 Mich App 303, 314; 894 NW2d 694 (2016).

-10-

This issue also involves the interpretation of statute and court rules. As noted earlier, this Court reviews questions of statutory interpretation de novo, *Capital Area Dist Library*, 298 Mich App at 227, reading the statute according to its plain language. *Grand Rapids*, 334 Mich App at 459. "We use the same rules of interpretation to interpret statutes and court rules." *Lech v Huntmore Estates Condo Ass'n*, 315 Mich App 288, 290; 890 NW2d 378 (2016).

## B. LAW AND ANALYSIS

With respect to attorney fees:

> Michigan follows the "American rule" with respect to the payment of attorney fees and costs. Under the American rule, attorney fees generally are not recoverable from the losing party as costs in the absence of an exception set forth in a statute or court rule expressly authorizing such an award. The American rule is codified at MCL 600.2405(6), which provides that among the items that may be taxed and awarded as costs are "[a]ny attorney fees authorized by statute or by court rule." The American rule stands in stark contrast to what is commonly referred to as the "English rule," whereby the losing party pays the prevailing party's costs absent an express exception. [*Haliw v City of Sterling Hts*, 471 Mich 700, 706-707; 691 NW2d 753 (2005).]

Defendants' motion cited several authorities in support of their belief they were entitled to attorney fees and costs. These included MCR 1.109, MCR 2.625, MCL 600.2591, and a newly-enacted Grattan township ordinance. They again cite these authorities in support of their arguments on appeal. Each of these authorities is addressed in turn.

### 1. MCR 2.625

Defendants argue the trial court erred in denying their motion under MCR 2.625. This court rule states:

> (A) Right to Costs.
>
> (1) In General. Costs will be allowed to the prevailing party in an action, unless prohibited by statute or by these rules or unless the court directs otherwise, for reasons stated in writing and filed in the action.
>
> (2) Frivolous Claims and Defenses. In an action filed on or after October 1, 1986, if the court finds on motion of a party that an action or defense was frivolous, costs shall be awarded as provided by MCL 600.2591. [MCR 2.625(A).]

"[T]he term 'costs' ordinarily does not encompass attorney fees unless the statute or court rule specifically defines 'costs' as including attorney fees." *Dessart v Burak*, 470 Mich 37, 42; 678 NW2d 615 (2004). Because MCR 2.625(A) permits "costs," but does not include a definition for "attorney fees," this court rule is intended to apply to costs only. The trial court awarded defendants costs. Therefore, defendants' request for attorney fees under this court rule is misplaced because only costs are recoverable under the rule, not attorney fees.

## 2. GRATTAN TOWNSHIP ZONING ORDINANCE, § 19.09(G)

Defendants also allege they are entitled to attorney fees under Grattan Township Zoning Ordinance, § 19.09(G), which provides:

> Should the Township prevail in a Kent Circuit Court lawsuit (either in full or in part) or in a municipal civil infraction proceeding in the District Court (either in full or in part), then the defendant or defendants (or plaintiff or plaintiffs where the Township is a defendant) shall reimburse the Township for its reasonable attorney fees and costs pursuant to any such court action or proceeding (including the Township's attorney fees and costs before the court proceedings, during the trial or formal hearing stage and through any appeals).

Other than their bare assertion[2] that they are entitled to attorney fees under this ordinance, defendants offer no substantive argument explaining their entitlement under this ordinance. "If a party fails to adequately brief a position, or support a claim with authority, it is abandoned." *MOSES Inc v SEMCOG*, 270 Mich App 401, 417; 716 NW2d 278 (2006). Defendants have abandoned this argument for failure to offer any substantive clarification explaining why they are entitled to attorney fees under the zoning ordinance.

## 3. MCR 1.109(E) AND MCL 600.2591

Finally, defendants claim they are entitled to attorney fees under MCR 1.109(E) and MCL 600.2591. MCR 1.109(E) states in relevant part:

> (5) Effect of Signature. The signature of a person filing a document, whether or not represented by an attorney, constitutes a certification by the signer that:
>
> (a) he or she has read the document;
>
> (b) to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law; and
>
> (c) the document is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.
>
> (6) Sanctions for Violation. If a document is signed in violation of this rule, the court, on the motion of a party or on its own initiative, shall impose upon the

---

[2] Defendants' reply brief on appeal offers some argument explaining why they were entitled to enact such an ordinance. However, this argument does not explain why the ordinance was enforceable against plaintiffs, or how application of the ordinance is not a violation of plaintiffs' due-process rights.

person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including reasonable attorney fees. The court may not assess punitive damages.

And, MCL 600.2591 provides:

> (1) Upon motion of any party, if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney.

> (2) The amount of costs and fees awarded under this section shall include all reasonable costs actually incurred by the prevailing party and any costs allowed by law or by court rule, including court costs and reasonable attorney fees.

> (3) As used in this section:

> (a) "Frivolous" means that at least 1 of the following conditions is met:

> (*i*) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.

> (*ii*) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.

> (*iii*) The party's legal position was devoid of arguable legal merit.

> (b) "Prevailing party" means a party who wins on the entire record.

In analyzing defendants' motion for attorney fees, the trial court found "[s]o the initial action I cannot find a basis for . . . frivolity nor can I find it in fact. I mean, its [sic] hard to imagine a more fact[-]intensive question than the issue of land division . . . ." It went on, "from my perspective and I'm sure from the Township's perspective, and property owner's perspective, very confusing, drawn out, and in many instances frustrating to determine . . . what are the rules and regulations governing acquisition and use of certain property."

Defendants now challenge this reasoning. They state that it should have been "readily apparent" to plaintiffs that the LDA does not preempt the township's land-division ordinance, and therefore their claim was devoid of legal merit. As such, it should have been clear to plaintiffs they were subject to the township's administrative remedies. They argue plaintiffs' counsel was aware of these conclusions, and therefore, plaintiffs filed a frivolous action.

Defendants fail to distinguish between a frivolous action and a colorable action. And, "the mere fact that [a] plaintiff did not ultimately prevail on its legal position does not render its filing of the complaint in Michigan frivolous." *Robert A Hansen Family Trust v FGH Indus, LLC*, 279 Mich App 468, 487; 760 NW2d 526 (2008). As discussed, there were legal bases for plaintiffs'

assertions that (1) plaintiffs were not subject to the township's land-division ordinances; and (2) their failure to exhaust administrative remedies. See discussion *supra*. Although plaintiffs did not ultimately prevail on their arguments, that does not mean plaintiffs' arguments were "devoid of arguable legal merit." MCL 600.2591(3)(a)(*iii*). Indeed, plaintiffs' arguments were not erroneous at the outset, but took some analysis to determine their merit. To the extent defendants believe plaintiffs' primary purpose in filing suit was to "harass, embarrass, or injure" defendants, defendants offer no evidence of the same, nor is there any evidence of this in the lower court record. Accordingly, the trial court did not abuse its discretion in denying defendants' motion for attorney fees.

Defendants present an additional argument that they are entitled to attorney fees on the basis of the affidavit by plaintiffs' attorney. They say the affidavit was "interposed for an improper purpose, such as to harass or cause unnecessary delay or expense in litigation costs . . . ." We disagree. While we question plaintiffs' rationale in filing this affidavit, we note the affidavit added nothing to plaintiffs' arguments in support of their partial motion for summary disposition. At the same time, it cannot be said that the affidavit was filed for an improper purpose. Following the first hearing on plaintiffs' partial motion for summary disposition, the trial court allowed the parties more time to gather evidence and to present additional briefing on the issues. Plaintiffs did not file another brief and it appears the affidavit was meant to provide the trial court additional evidence in support of plaintiffs' motion. Although the filing of the affidavit was ultimately misguided, it seems the affidavit was an attempt to provide a fair response to the trial court's instruction.

Affirmed.


/s/ Thomas C. Cameron
/s/ Kirsten Frank Kelly
/s/ Michael J. Kelly